2003 WY 123

**Charles A. EKBERG, Appellant (Plaintiff),**

v.

**Edward C. SHARP, Appellee (Defendant).**

**No. 02–227.**

Supreme Court of Wyoming.

Sept. 30, 2003.

Representing Appellant: Donald E. Miller of Graves, Miller & Kingston, P.C., Cheyenne, WY.

Representing Appellee: John G. Fenn of Yonkee & Toner, LLP, Sheridan, WY.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] Charles A. Ekberg filed suit requesting, in part, specific performance of an option to purchase real property. Ekberg appeals the district court's assessment of damages. We affirm.

## ISSUES

[¶ 2] Ekberg sets forth the following issues on appeal:

I. Did the trial court abuse its discretion in denying the appellant's timely motion for leave to amend as set out in his "Motion for Second Amended Complaint"?

II. Did the evidence support the district court's findings as to:

A. Appellant's claim for lost rental and appellee's claim for right to offset as of September 15, 2001;

B. Appellant was barred from his legal right to enter the property after September 15, 2001.

Appellee Edward C. Sharp phrases the issues on appeal as:

Did the District Court abuse its discretion when denying Appellant/Plaintiff Ekberg's Motion to Amend his complaint a second time?

Did the District Court abuse its discretion when holding that Appellant/Plaintiff Ekberg failed to meet his burden of proof on his damage claims?

## FACTS

[¶ 3] Sharp and Ekberg entered into a "Lease with Purchase Option" on June 19, 2000. The lease provided that Sharp would lease to Ekberg the furnished upstairs apartment of a two-story residence located at 631 West Loucks Street, Sheridan, Wyoming. The agreement further granted Ekberg an option to purchase that property. In August of 2001, Eckberg notified Sharp, in writing, that he was going to exercise his option to purchase the property and enclosed a check for $5,000.00. On September 14, 2001, Sharp, through his attorney, notified Ekberg via letter that Sharp would not honor the purchase option because Sharp believed it not to be legally binding.

[¶ 4] On September 25, 2001, Sheridan County Title Insurance Agency informed Sharp, in writing, that Ekberg had tendered $82,000.00 to the agency for the purpose of paying the full amount of the purchase price. The agency suggested closing on the real property occur October 1, 2001. Two days later, Sharp's attorney reiterated Sharp's intention not to honor the purchase option.

[¶ 5] On October 1, 2001, Ekberg filed his original complaint seeking specific performance of the purchase option. Sharp timely answered the complaint. The district court then held a scheduling conference on January 11, 2002, and set the matter for trial August 9, 2002. The district court also set a dispositive motion filing deadline of February 18, 2002, and a discovery cut-off date of July 1, 2002.

[¶ 6] Subsequently, the parties both filed motions for summary judgment. Ekberg then amended his complaint, after obtaining permission to do so by the district court

through formal motion, on March 15, 2002. In this amended complaint, Ekberg alleged causes of action for breach of contract, specific performance, and damages related to lost rental income. Sharp also moved for leave to assert counterclaims against Ekberg, which was granted by the district court.

[¶ 7] The district court granted Ekberg partial summary judgment for specific performance of the purchase option on June 24, 2002. Thereafter, on July 10, 2002, Ekberg filed a motion to again amend his complaint along with a proposed second amended complaint. This second amended complaint included the same causes of action as the amended complaint but added a request for damages related to loss of business income, loss of use of enjoyment of the property, and other damages. Sharp filed opposition to this motion, and Ekberg replied. The district court denied Ekberg's motion on July 22, 2002.

[¶ 8] On August 9, 2002, a bench trial was held concerning damages and the asserted cross-claims. After trial, the district court offset Sharp's expenses against Ekberg's actual lost rental income paid by tenants of the lower apartment of the property; indicated that insufficient facts were presented to support that Ekberg was required to pay additional rent to Sharp; found that Ekberg could have entered the premises and was therefore not entitled to expenses; and granted all interest earned on the $82,000.00 escrowed amount to Sharp. This appeal followed.

## STANDARD OF REVIEW

[¶ 9] The law in Wyoming is well settled that the decision to allow amendment to pleadings is vested within the sound discretion of the district court. That decision will be reversed only for an abuse of discretion shown by clear evidence. *Dynan v. Rocky Mountain Fed. Sav. & Loan*, 792 P.2d 631, 640 (Wyo.1990); *Bush v. Duff*, 754 P.2d 159, 166–67 (Wyo.1988); *Robertson v. TWP, Inc.*, 656 P.2d 547, 551 (Wyo.1983); *Elder v. Jones*, 608 P.2d 654, 657 (Wyo.1980); *Rose v. Rose*, 576 P.2d 458, 459 (Wyo.1978); *Breazeale v. Radich*, 500 P.2d 74, 74 (Wyo.1972).

Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound

judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *In re: Worker's Compensation Claim of Shryack*, 3 P.3d 850, 855 (Wyo.2000) (quoting *Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998)). An abuse of discretion has also been said to have occurred only when the decision shocks the conscience of the court and appears to be so unfair and inequitable that a reasonable person could not abide it. *Hall v. Hall*, 2002 WY 30, ¶ 12, 40 P.3d 1228, ¶ 12 (Wyo.2002); *Everheart v. S & L Industrial*, 957 P.2d 847, 853 (Wyo.1998); *Goddard v. Colonel Bozeman's Restaurant*, 914 P.2d 1233, 1238 (Wyo.1996).

*Sinclair Oil Corp. v. Pub. Serv. Comm'n*, 2003 WY 22, ¶ 41, 63 P.3d 887, ¶ 41 (Wyo. 2003).

[¶ 10] Our standard of review when a trial is held before the bench is also well established:

The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail weighing disputed evidence. Findings of fact will not be set aside unless the findings are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. We review a district court's conclusions of law de novo on appeal.

*Carroll v. Bergen*, 2002 WY 166, ¶ 9, 57 P.3d 1209, ¶ 9 (Wyo.2002) (quoting *Springer v. Blue Cross and Blue Shield of Wyoming*, 944 P.2d 1173, 1175–76 (Wyo.1997)); *see also Saulcy Land Co. v. Jones*, 983 P.2d 1200, 1203 (Wyo.1999).

## DISCUSSION

### Denial of Motion to Amend Pleadings

[¶ 11] In his first issue on appeal, Ekberg asserts that under the circumstances

where he had tendered $82,000.00 under the purchase option and had been denied access to the real property, it was an abuse of discretion for the trial court to refuse to allow him to amend his complaint so that he could claim all his legal damages. Specifically, Ekberg argues that the first time he received official notice that he had a right to enter the real property as of September 15, 2001, was when the district court granted partial summary judgment on June 24, 2002. Accordingly, he contends that this marked the first day in which he could have been able to fathom he possessed a claim of damages as asserted in his proposed second amended complaint for loss of business income and loss of use of enjoyment of the property. In addition, Ekberg argues that less than two weeks after receiving such notice and less than a week after Sharp filed his amended answer and counterclaim, he filed his motion for leave to file the second amended complaint.

[¶ 12] Wyoming Rule of Civil Procedure 15 addresses amendment of pleadings. That rule provides, in applicable part (emphasis added):

(a) *Amendments.*—A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served, or if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. *Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires* . . . .

(b) *Amendments to Conform to the Evidence.*—When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. *Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.* If evidence is objected to at the trial on the ground that it is not within

the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

Wyoming Rule of Civil Procedure 16 is also applicable in this instance as the district court set particular deadlines in this matter. That rule authorizes the district court to set certain dates, including the setting of pretrial conferences, deadlines for pretrial motions, and deadlines for the completion of discovery and to address any other appropriate matters. The objectives of the rule are to allow the district court to expedite the disposition of actions, establish early and continuing control over actions, and facilitate settlement of the case. In addition, under this rule, the dates set by the district court may not be modified except "upon a showing of good cause." *See also Carroll v. Bergen,* 2002 WY 166, ¶ 20, 57 P.3d 1209 (recognizing that adherence to scheduling orders is critical in maintaining the integrity of judicial proceedings; that pretrial orders control the issues to be litigated, allowing the parties to rely on the pretrial order exhibit and witness lists to prepare their cases; and holding that the trial court is vested with extensive authority to enforce such pretrial orders).

[¶ 13] The facts in this matter establish that Ekberg sought to amend his complaint for the second time on July 10, 2002, after the discovery cut-off deadline of July 1, 2002, had passed and only shortly before the scheduled trial date of August 9, 2002. As indicated previously, the district court scheduled these dates in a scheduling conference held on January 11, 2002. Therefore, Ekberg had sufficient notice of these dates.

[¶ 14] Moreover, Ekberg provided the district court with no explanation of why he could not have made the additional amendments to his pleadings much earlier. Ekberg contends that he could not have envisioned requesting damages for loss of

business income and loss of use of enjoyment of the property until the district court issued its order granting partial summary judgment on June 24, 2002. We do not believe this to be the case. Clearly as early as October 1, 2001, the date Ekberg filed his original complaint seeking to enforce the purchase option or in any event on at least March 15, 2002, the date Ekberg was given permission to file his first amended complaint, he should have contemplated the damages which reasonably flow from his asserted breach of contract claim.

[¶ 15]   Additionally, allowing a last minute amendment to Ekberg's complaint after the discovery cut-off date and just a few weeks before trial would have caused Sharp both undue prejudice and delay. Allowing the amendment to occur, in essence, would have allowed Ekberg to raise additional claims for damages, occasioning the need for significantly more discovery and substantial delay in the proceedings. Accordingly, Ekberg's efforts to bring additional last minute theories for loss of business income and loss of use of enjoyment of the property damages may be characterized as unfair, unjust, and prejudicial to Sharp. As such, we hold that Ekberg failed to show good cause for his motion to amend under either W.R.C.P. 15 or 16. We hold, therefore, that the district court did not abuse its discretion when it denied Ekberg's motion to amend his complaint a second time.

### Sufficiency of the Evidence in Assessment of Damages

[¶ 16]   Ekberg asserts that the district court erred by finding that any rents due him during the period after September 15, 2001, were offset by the expenses Sharp incurred in maintaining the property and the interest Ekberg earned from the purchase proceeds over that same time frame. Ekberg's argument is founded on two theories. First, Ekberg contends that the amount for which he could have rented the property would have been higher than what was actually received. Secondly, Ekberg claims there should not have been an offset for the interest the purchase proceeds earned pending the completion of the sale.

[¶ 17]   Ekberg provides no analyses detailing why the district court's determination was unsupported by the evidence. In making his argument, Ekberg merely contends that his self-serving testimony and some testimony of Sharp were virtually uncontested and should have been relied upon by the district court. Thus, the crux of Ekberg's argument depends on the issue of credibility of those witnesses. Review of the transcript discloses that Ekberg testified over objection that it was his opinion that the main floor and basement of the real property could have been rented for $975.00 to $1,000.00 per month. This opinion was based on a hearsay letter from a realtor, purported newspaper advertisement concerning rentals in the Sheridan area, and Ekberg's own asserted experience in attempting to locate rental properties in that same area. The indicated realtor never testified nor were the letter or newspaper advertisements ever admitted into evidence. Accordingly, Ekberg provided little support or foundation with respect to his opinion.

[¶ 18]   Ekberg further attempts to "back into" his conjectural monthly rental amount by arguing that it is supported by his rental of the upper floor for $450.00 per month, and Bernard and Alice Harnish renting the main floor and basement of the real property for $400.00 per month during part of the applicable period—combined with a "good renter" discount afforded the Harnishes for performing certain tasks at the property, taking good care of the property, and paying their rent on time, estimated at $200.00 to $300.00 per month. Thus, Ekberg asserts that the monthly rental of the entire property would have been $1,050.00 to $1,150.00 per month. Review of the "good renter" discount amounts quoted by Ekberg discloses that they were based on the speculative and conjectural opinion of Sharp given during his testimony at trial.

[¶ 19]   The district court was provided credible evidence that Ekberg indeed rented the upper floor of the property for $450.00 per month and that Bernard and Alice Harnish rented the main floor and basement for $400.00 per month during part of the applicable period. Therefore, the district court had a substantiated basis for utilizing these figures in making its determination. In *Avery*

*v. State,* 2002 WY 87, ¶ 5, 47 P.3d 973, ¶ 5 (Wyo.2002), we recognized:

> On appeal, sufficiency of the evidence is analyzed by viewing the evidence in the light most favorable to the prevailing party and by affording to the prevailing party the benefit of all reasonable inferences that may be drawn from that evidence. *Nollen v. State,* 12 P.3d 682, 684 (Wyo.2000) (quoting *Rodriguez v. State,* 962 P.2d 141, 148 (Wyo.1998)). We do not reweigh the evidence or re-examine the credibility of the witnesses. *Nollen,* 12 P.3d at 684 (quoting *Rodriguez,* 962 P.2d at 148). Neither do we usually consider conflicting evidence presented by the non-prevailing party. *Williams v. State,* 986 P.2d 855, 857 (Wyo. 1999). Where, however, as here, the fact finder was a judge, rather than a jury, our role is somewhat more expansive:

> > "The factual findings of a judge are not entitled to the limited review afforded a jury verdict. *Hopper v. All Pet Animal Clinic, Inc.,* 861 P.2d 531, 538 (Wyo. 1993). While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. *Id.* Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail weighing disputed evidence. *Id.* Findings of fact will not be set aside unless the findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.*"

> *Stroup v. Oedekoven,* 995 P.2d 125, 128 (Wyo.1999) (quoting *Springer v. Blue Cross and Blue Shield of Wyoming,* 944 P.2d 1173, 1175–76 (Wyo.1997)). When supported by substantial evidence, a judge's factual findings will not be disturbed on appeal unless they are against the great weight of the evidence. *McNeiley v. Ayres Jewelry Co.,* 886 P.2d 595, 597 (Wyo.1994); *Leavell v. Linn,* 884 P.2d 1364, 1368 (Wyo.1994).

We simply do not find the trial court's findings to be clearly erroneous.

[¶ 20] Ekberg also argues that the interest earned on the deposited amount of $82,000.00 should not have been credited as an offset in Sharp's favor. He contends that the district court improperly credited Sharp with the expenses Sharp incurred managing the property over the applicable time period. We are not persuaded. Sharp testified that he should be entitled to interest on the $82,000.00 from September 15, 2001, to August 31, 2002, at 2.5% interest, for a total of $1,793.77. Likewise, Sharp testified that he was required to pay $1,417.38 in expenses over the applicable period regarding the property. These amounts were further supported by admitted documentary evidence presented at trial. Obviously, during the period that Ekberg sought to recover rents concerning the property, Ekberg was not required to incur the maintenance, repair, insurance, taxes, and other related expenses associated with owning and renting the property. Accordingly, we hold that the trial court did not abuse its discretion when it applied the setoff as determined.

[¶ 21] Finally, Ekberg complains that the district court erred in finding that Ekberg was not denied his legal right to enter the property after September 15, 2001, and in refusing to grant him damages related to hotel expenses. Ekberg testified that he last used the property in mid-October, 2001, and contends that he did not learn of his right to occupy the property until the district court issued its order on partial summary judgment on June 24, 2002. Ekberg also asserted during his testimony that he had incurred a $389.48 expense for staying in a hotel because he was not able to possess the property. Nevertheless, other testimony at trial, along with Ekberg's admissions, establishes that Ekberg continued to possess a key to the upper apartment, left personal belongings within the apartment, and never provided notice that he was going to move out of the apartment. Bernard Harnish also testified that Ekberg telephoned him twice during the applicable period and requested that Harnish turn off some telephone equipment owned by Ekberg in the apartment. Critically, although he attempted to discount his statements, Ekberg in responding to interrogatories admitted that he continued to

occupy and use the apartment after September 15, 2001.

[¶ 22] Accordingly, we hold that credible evidence was presented to the district court to support its determination that Ekberg was not barred from his legal right to enter the property after September 15, 2001, and denying his request for damages related to hotel expenses. As we recognized in *Williams v. Collins Communications, Inc.,* 720 P.2d 880, 892–93 (Wyo.1986):

The rules on specific performance explained in *McCoy Farms, Inc. v. J & M McKee,* 263 Ark. 20, 563 S.W.2d 409, cert. denied 439 U.S. 862, 99 S.Ct. 184, 58 L.Ed.2d 171 (1978), lend support to our conclusion:

"... Specific performance is an equitable remedy which compels the performance of a contract on the precise terms agreed upon or such a substantial performance as will do justice between the parties under the circumstances. It is a means of compelling a contracting party to do precisely what he should have done without being coerced by a court. 81 C.J.S. Specific Performance § 2, 701; 71 Am.Jur.2d 10, Specific Performance, § 1; Restatement of the Law, Contracts § 358, Comment a, § 359(2), § 360(b), § 326(c). The object in such cases is to place the party without fault in as nearly the same position as he would have been had there been no default by the other party. *Pillsbury v. J.B. Streeter, Jr. Co.,* 15 N.D. 174, 107 N.W. 40 (1906). The guiding principle in such cases is to relate the contract back to the date set therein. *Ellis v. Mihelis,* 60 Cal.2d 206, 32 Cal.Rptr. 415, 384 P.2d 7 (1963); *Meyer v. Benko,* 55 Cal.App.3d 937, 127 Cal.Rptr. 846 (1976)." (Emphasis added.) 563 S.W.2d at 415.

As indicated in the above quotation, the object of specific performance is to place the party without fault in the position he would have been in had there been no default.

[¶ 23] In that same case, we addressed the proper considerations that must be made when specific performance is granted. We stated:

An accounting was required in *Duane Sales, Inc. v. Carmel,* 57 A.D.2d 1003, 394 N.Y.S.2d 307 (1977), reversed on other grounds, 49 N.Y.2d 862, 427 N.Y.S.2d 930, 405 N.E.2d 175 (1980), after specific performance of a real property purchase option agreement had been granted. The New York Supreme Court modified the judgment, concluding that:

"... an accounting should be had which should take into consideration, among other things, the following: *the rents received by defendants during the period from the date of the conveyance of the title to the premises;* any profits resulting to the defendants in their operation of the property; any losses sustained by the plaintiff because of the delay in conveyance of title; necessary expenses incurred by the defendants in the operation of the property, such as payments of principal and interest on the mortgage, property taxes, insurance, and minor repairs; the benefits to the plaintiff in retaining the use of the purchase money during the pendency of the litigation." (Emphasis added.) 394 N.Y.S.2d at 308, 427 N.Y.S.2d 930, 405 N.E.2d at 175.

Although *Duane Sales* was reversed on other grounds by the Court of Appeals of New York, the quoted language regarding the accounting was cited with approval in *Bravo v. Buelow,* 214 Cal.Rptr. 65, 168 Cal.App.3d 208 (1985), an action for specific performance of a real estate sales contract. The California Court of Appeal further said:

" 'In California the compensation which may be awarded incident to a decree of specific performance is not for breach of contract and is not legal damages. The complainant affirms the contract and asks that it be performed. Since the time for performance has passed, the court relates that performance back to that date, by treating the parties as if [performance] ... had taken place at that time. Thus the [real estate] buyer is entitled to the rents and profits from the time the contract should have been performed, and the [real estate] seller is entitled to an offset for the interest on the purchase money which he would have received had the contract been performed. The process is more like an

accounting between the parties than an assessment of damages. [Citations].' " 214 Cal.Rptr. at 69, quoting from *Hutton v. Gliksberg*, 128 Cal.App.3d 240, 248, 180 Cal.Rptr. 141 (1982).

720 P.2d at 893–94.

[¶ 24] Upon our review, we find that the district court's ruling is based on sufficient evidence and that the district court properly applied the applicable rule of law concerning the assessment of damages. Had the district court granted Ekberg the damages he requested, which are at issue in this appeal, Ekberg would have been placed in a position that was better than he would have been placed had there been no default on the option to purchase real property. As noted above, the guiding principle in specific performance cases is to relate the contract back to the date set therein and to only place the party without fault in as nearly the same position as he would have been had there been no default by the other party.

## CONCLUSION

[¶ 25] Given those reasons set forth above, the actions of the district court are affirmed.