2003 WY 158

George E. SHETKA and Rose Marie
Shetka, jointly and severally,
Appellants (Defendants),

v.

EPP CONTRACTING, INC.,
Appellee (Plaintiff).

No. 03–5.

Supreme Court of Wyoming.

Dec. 8, 2003.

Representing Appellant: Mark J. White and Jill E. Kucera of White, White & Kucera, P.C., Riverton, WY.

Representing Appellee: Robert O. Anderson, Riverton, WY.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] Appellants George E. and Rose Marie Shetka, appeal the judgment entered by the district court in favor of appellee Epp Contracting, Inc. (ECI) concerning construction and other repair work performed on the Shetkas' property. The Shetkas argue that the findings made by the district court are clearly erroneous and are not supported by sufficient evidence. We affirm.

## ISSUES

[¶ 2] The Shetkas phrase the issues on appeal as:

1. Whether the district court's findings of fact were clearly erroneous and not supported by the evidence?

2. Whether the district court's conclusion that plaintiff performed [its] duties in a good and workmanlike fashion was clearly erroneous?

3. Whether the district court's conclusion that defendants failed to prove their counterclaim was clearly erroneous?

## FACTS

[¶ 3] The Shetkas purchased a home in Dubois, Wyoming in 1999. They hired ECI to replace the existing shingle roof on the home with a metal roof, do leveling of the floor within the home, construct a new pole barn, and perform other "odds and ends" repairs.

[¶ 4] The work on the roof, the floor-leveling job, and the construction of the pole barn were performed pursuant to three separate written contracts. The other work was performed by ECI on an agreed upon "cost plus" basis. Detailed monthly statements from ECI were sent to the Shetkas for the work performed. The Shetkas paid these monthly statements. However, after the work was completed, the Shetkas failed to pay the final invoice in the sum of $12,888.00.

[¶ 5] On January 12, 2001, ECI filed a complaint with the district court for breach of contract, open account, unjust enrichment, and foreclosure of lien. The Shetkas answered the complaint and also filed a counterclaim for damages. After a bench trial, the district court entered its Judgment and Order ruling in favor of ECI and awarding ECI $12,888.00. The district court further found that the Shetkas had failed to prove their counterclaim.[1] This appeal followed.

## STANDARD OF REVIEW

[¶ 6] In *Ekberg v. Sharp*, 2003 WY 123, ¶ 10, 76 P.3d 1250, ¶ 10 (Wyo.2003), we set forth:

The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail weighing disputed evidence. Findings of fact will not be set aside unless the findings are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. We review a district court's conclusions of law de novo on appeal.

## DISCUSSION

[¶ 7] The Shetkas assert that the determinations made by the district court regarding the work performed by ECI, as well as the decision that the Shetkas' failed to meet their burden of proof concerning their assert-

---

1. The cause of action for foreclosure of lien was dismissed prior to trial pursuant to stipulation of the parties.

ed counterclaim, are not supported by substantial evidence. In making their argument that there is insufficient evidence to support the district court's ultimate decision, the Shetkas provide little analysis of the evidence but rather complain that the documentation and testimony were inconsistent, deficient, or not credible. In response, ECI argues that sufficient evidence exists to support the district court's ruling but fails in its effort to provide this court with independent citation to the record to support its conclusion. Upon our review of the entire record, we conclude that sufficient evidence was presented to support the district court's determination.[2]

### Metal Roof

 [¶ 8] The Shetkas complain that the district court should not have characterized the contract concerning the metal roof as a "bid" as opposed to an "estimate." The Shetkas also argue that the district court improperly ruled that the Shetkas accepted the metal roof contract on January 7, 2000. However, the manner in which the district court characterizes the contract and the actual date it was accepted by the Shetkas are of little significance.

[¶ 9] The metal roof contract included specific line items that enumerated the work to be performed and the dollar figure attached to each line item. Mr. Gari Epp, owner of ECI, testified that he understood that ECI was to keep costs as close as possible to the total $19,200.00 figure indicated in the contract. Mr. Epp further stated that the Shetkas specifically informed him that they wanted the work performed as cheaply as possible because they did not want to spend a lot of money on the home considering it was simply their "hunting cabin."

[¶ 10] The evidence presented showed that the Shetkas ultimately ordered the work concerning the metal roof to proceed. Mr. Shetka testified that when he received the billing for the metal roof, he called Mr. Epp to ask about the term "bid" and was told "bid" was just the word the computer used

for billing. Apparently satisfied with this explanation and the work performed, the Shetkas paid both invoices in full.

[¶ 11] The Shetkas also assert that the district court erred in concluding that ECI was not responsible under the contract to replace all of the substrate of the roof. In support of his claim, Mr. Shetka references his own testimony wherein he informed Mr. Epp that if anything was wrong with the substrate, he wanted it repaired. Upon review, however, Mr. Shetka testified only that he wanted "rotten lumber" repaired and that when ECI found a truss that had decayed somewhat and advised him of this find, the truss was replaced by ECI as Mr. Shetka requested. Mr. Epp testified that he and Mr. Shetka never discussed the replacement of the substrate, that this was never included as a part of the metal roof contract, and that the Shetkas never indicated they wanted the substrate replaced as part of the work to be performed. Additionally, Mr. Epp stated that when the old cedar shingles were stripped off of the roof, it was noticed that some of the substrate was not fastened properly and that some of the substrate undulated, did not lie flat on the roof, and was crooked. Accordingly, ECI properly fastened the loose substrate and replaced and straightened some of the fascia boards because this work was minimal in cost.

[¶ 12] When questioned about the hip ridges of the substrate, Mr. Epp admitted that the hip ridges did not lay perfectly straight because the trusses for the roof were not pre-manufactured but made out of uneven native lumber. Mr. Epp concluded that this problem was not significant in nature and that the ridge cap could be placed in a straight enough manner, especially considering the prohibitive cost to rebuild and fix the hip ridges and the Shetkas' clear directive that they did not desire to spend a lot of money on the repairs. Accordingly, Mr. Epp did not further discuss the issue with the Shetkas.

[¶ 13] Ultimately, a review of the evidence shows that the district court could find

---

**2.** We note that the parties agreed to a review of the property by the district court, which was ultimately conducted. Because that review is in

no way memorialized in the record on appeal, we do not rely upon any facts gleaned from the review of the property in making our holding.

that complete repair or replacement of the substrate was not contemplated by the parties or included in the roof work required to be performed by ECI. The fact that ECI did some limited work on the substrate does not change this conclusion. The testimony clarified that the main purposes for placing a metal roof on the home were to remove the old unsightly and somewhat dilapidated cedar shingles on the roof and to fix a leak in the family room/garage area at as low a cost as possible within the quoted price. The substrate work was simply not specifically included in the contract work to be performed.

[¶ 14] The Shetkas complain that the roof leaked after the work was performed by ECI. Evidence presented showed that ECI returned to correct leaking that occurred in one of the bedrooms of the home. Testimony was also received that any leaking that occurred may not have been a result of ECI's roof work because it was virtually impossible to determine the nexus of any leak and the leaking could have been caused by circumstances unrelated to ECI's work.[3]

[¶ 15] The Shetkas also assert that the district court erred by concluding that ECI gave no specific warranty on the roof. The testimony of both Mr. Shetka and Mr. Epp substantiated that no express or written warranty was ever given or requested. Even the Shetkas' expert, Mr. Mark G. Sehnert, indicated that, while he would have given a "no-leak" warranty on the roof had he been on the job, generally no warranty whatsoever is provided in the industry.[4]

[¶ 16] The Shetkas additionally cite to *Matheson Drilling, Inc. v. Padova,* 5 P.3d 810, 812 (Wyo.2000), to argue that under Wyoming law all construction contracts contain an implied warranty that the work will be performed in a skillful, careful, diligent, and workmanlike manner. The Shetkas contend that given the evidence presented, there can be no question that the work on the roof did not meet this standard. Mr. Sehnert, the Shetkas' expert, was very critical that the

sheet metal was not placed on a flat surface, some of the panels were damaged prior to installation yet still used, proper fastening patterns and spacing were not used, old flashing was used, a cricket was not utilized with respect to the chimney, gapping existed in the lap of two sheets, screws were installed in ribs of the sheet metal, some caulking was inappropriate, and other problems. Mr. Sehnert, therefore, opined that the workmanship of the roof would rate only a 4 to 4½ on a scale of 10 considering both aesthetics and functionality. Nevertheless, other testimony provided that the sheet metal was placed on a flat surface, that the panels were not damaged prior to installation, that proper fastening patterns were used, and that even spacing of the screws was utilized in most cases to ensure the sheet metal was securely fastened to the roof but was impossible in some cases. Other testimony was elicited that while old flashing was used, such use was appropriate and saved costs, there were reasonable considerations for not using a cricket on the fireplace area, gapping was appropriate given the complex nature of the roof involved, and that caulking was minimal and appropriately utilized. Accordingly, we simply cannot conclude that the district court was clearly erroneous when it determined that the work was performed by ECI in a skillful, careful, diligent, and workmanlike manner.

[¶ 17] We hold that there exists sufficient evidence within the record to support the district court's ultimate conclusion that a contract was formed between ECI and the Shetkas concerning the work performed on the metal roof, that ECI properly performed the work that was required, and that the Shetkas owed ECI for such services. Moreover, sufficient evidence existed for the district court to conclude that ECI's work on the metal roof was performed in a "skillful, careful, diligent, and workmanlike manner" given the specified terms of the contract and related circumstances. While some of the particular factual findings reached by the district court

---

**3.** Mr. Shetka also failed to mention any leak damage or leak issues after completion of construction when entering into a property insurance contract.

**4.** Further, the Shetkas did not include any allegations of breach of warranty in their counterclaim.

involving the metal roof may have been in error, these findings of fact do not compromise the district court's ultimate determination concerning ECI's work on the metal roof.

### Floor Leveling

[¶ 18] The Shetkas argue that they understood ECI was going to level the floor and, therefore, the district court wrongfully concluded that ECI had performed this work in a skillful, careful, diligent, and workmanlike manner. The evidence, however, indicates that ECI was hired to stabilize the floor in the home as best as possible. Testimony from Mr. Epp and Mr. Shetka referred to portions of the floor as "bouncy" and "spongy," and Mr. Epp specifically recalled advising Mr. Shetka that completely leveling the floor would be next to impossible. Indeed, Mr. Shetka testified that he wanted ECI "to take the bounce out of it" and that he did not expect ECI to make the floor absolutely level. Subsequently, Mr. Shetka admitted that, while the floor was not level after the work was done by ECI, the floor was no longer "bouncy."

[¶ 19] The expert retained by the Shetkas indicated that, although he was an experienced contractor, he would not take on such a project because it would be very difficult to completely level the floor unless he aligned with a specialist, presumably at an increased cost. Another bid received by the Shetkas after ECI performed work on the floor indicated that the floor could only be leveled "to the best of our ability," thus still not guaranteeing that the floor would be absolutely level. Finally, after ECI performed the floor work, Mr. Shetka walked on the floor for six months before the total construction was finalized but failed to request that any additional work be done. Hence, we hold there exists sufficient evidence within the record to support the district court's ultimate conclusion concerning ECI's floor leveling work.

### Pole Barn

[¶ 20] The Shetkas contend that the district court's finding that the construction of the pole barn was agreed upon by the parties is unsubstantiated by the evidence presented at trial. Evidence was elicited that plans for the pole barn were sent back and forth between the parties, and an agreement was made as to the final design. An estimate was prepared for this work and each line item discussed. Mr. Shetka then advised ECI to proceed to build the pole barn as detailed. Thereafter, Shetkas determined that additional work should be performed by ECI on the pole barn. This work was completed and billed as additional work performed. Ultimately, the Shetkas inspected the pole barn, made no objections, and paid all of the invoices related to the pole barn.

[¶ 21] The Shetkas' expert spoke about defects with the pole barn, including warped poles, damaged panels, lack of parameter skirt, no shim or jambs on the walk-in door, and screw hole areas where light and weather penetrated the building. Testimony was also presented concerning hazards within the pole barn regarding the storage rack and the walk-in door. Problems with the turbines located on the roof of the structure were also discussed. Nevertheless, as indicated above, the pole barn was built as agreed by the parties and met all applicable Uniform Building Code and local snow and wind guidelines.

[¶ 22] ECI refunded to the Shetkas $1,000.00 because of a misunderstanding concerning the design of the pole barn regarding how the 2x4s were to be nailed to the barn. The issues dealing with the door and turbines were resolved by ECI while still on the job. The record contains sufficient evidence to support the district court's ultimate conclusion concerning ECI's work on the pole barn.

### Other Construction/Repair Issues

[¶ 23] The Shetkas conclude that the district court improperly failed to make findings of fact concerning the other defects in the construction/repair work performed or supervised by ECI. Primarily the Shetkas assert various plumbing problems. In addition, the Shetkas complain about some of the billing practices of ECI.

[¶ 24] Clearly the parties agreed that additional construction/repair work would be

performed on a "cost-plus" basis at a particular point in time. Testimony confirmed that Mr. Shetka was in charge of the plumbing and electrical work and entered into negotiations with the plumbers and electricians with respect to the ordering and installation of material. The bills were computer generated with itemization of each line item and accompanying dollar figures. Many discussions were held between the parties concerning these billings. The Shetkas made payment after having adequate time to discuss their concerns with ECI, and to inspect and apparently accept the work done. The only "rub" that arose came when the Shetkas refused to make payment of the last billing over a period of time in the amount alleged within the complaint.

[¶ 25] As indicated by ECI, the fact that the district court made no findings with respect to the other alleged construction/repair defects infers that the district court found that the Shetkas did not prove any other defects. We agree. Competent evidence exists in the record to support such a conclusion.

*Counterclaim*

[¶ 26] Finally, the Shetkas argue that the district court improperly found that they failed to meet their burden of proof concerning their asserted counterclaim for damages. The crux of this counterclaim involves contentions that the Shetkas were damaged as a result of the sub-par construction/repair work performed or supervised by ECI. As indicated above, the evidence presented at trial supports a determination that ECI performed and supervised the work on the Shetkas' property within the parameters agreed upon by the parties. It is, therefore, logical for the district court to conclude that the Shetkas failed to meet their burden of proof concerning the alleged related damages asserted in their counterclaim.

## CONCLUSION

[¶ 27] We readily admit the record before us does reflect some evidence that is contrary to some of the factual determinations made by the district court. However, upon careful review and consideration of the entire record, we hold the record provides a rational basis for the district court's ultimate conclusions. These conclusions of law were not clearly contrary to the overwhelming weight of the evidence and were within established law. We will not substitute our judgment for that of a district court when substantial evidence supports the decision rendered. *Ekberg v. Sharp*, 2003 WY 123, ¶ 10, 76 P.3d 1250. Moreover, this court must affirm the district court's action on appeal if the judgment is sustainable on any legal ground appearing in the record. *Masinter v. Markstein*, 2002 WY 64, ¶ 8, 45 P.3d 237, ¶ 8 (Wyo.2002).

[¶ 28] For these reasons, we hold the determination of the district court is affirmed.