2011 WY 146

**WYOMING DEPARTMENT OF REVENUE, Appellant (Petitioner),**

v.

**QWEST CORPORATION, Appellee (Respondent).**

No. S–11–0002.

Supreme Court of Wyoming.

Oct. 21, 2011.

Representing Appellant: Gregory A. Phillips, Wyoming Attorney General; Michael L. Hubbard, Deputy Attorney General; Cathleen D. Parker, Senior Assistant Attorney General; Martin L. Hardsocg, Senior Assistant Attorney General. Argument by Mr. Hardsocg.

Representing Appellee: Michael Rosenthal and Lucas Buckley, Hathaway & Kunz, P.C.; Larry H. McMillin and Roy A. Adkins, Qwest Corporation, Denver, Colorado. Argument by Mr. McMillin.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1] This case involves issues of administrative procedure and sales tax audits and refunds. After an audit by the Department of Audit (DOA), the Department of Revenue (DOR) determined that Qwest was not entitled to a refund of sales tax which was incorrectly collected from its customers and remitted to the state because Qwest did not provide data showing the actual amount of tax collected and remitted by month and by county. Qwest appealed the DOR's determination to the State Board of Equalization (SBOE), asserting it did not retain that type of information and its refund should be esti-

mated using a process employed in a prior audit to assess sales tax.

[¶ 2] The SBOE held a contested case hearing, then stayed the matter to give the parties an opportunity to settle their differences. Two months after the evidentiary portion of the contested case hearing concluded, Qwest produced to the DOR the actual sales tax information it had claimed did not exist. It explained that another department of the Qwest organization had the material and Qwest employees involved with the DOA audit were not previously aware that the information existed. The SBOE supplemented the record with the actual data, reversed the DOR's decision that Qwest was not entitled to a refund and remanded the case to the DOR to accomplish the refund in accordance with the newly produced evidence.

[¶ 3] The DOR petitioned the district court for review, it affirmed, and the DOR appealed to this Court. At issue in this appeal is the specific question of whether the SBOE erred by considering the newly produced evidence. The general issues presented include the interrelationship between the DOR, DOA and SBOE and the rights of taxpayers to refunds of incorrectly collected sales taxes. We affirm the SBOE's decision that Qwest was entitled to a refund, but conclude the SBOE erred by considering Qwest's evidence which was not produced to the DOR/DOA during the audit. The refund amount should have been calculated using the estimate procedure and information available during the audit. This matter is remanded for further proceedings consistent with this decision.

**ISSUES**

[¶ 4] The DOR sets out eight issues in its opening brief, many of which are redundant. The critical issues for our consideration are:

1. Did the SBOE err by considering, in a contested case proceeding, Qwest's evidence of the actual sales tax collected when Qwest did not provide such information to the DOR/DOA prior to the final assessment, despite repeated requests by the DOR/DOA for such information?

2. Is there substantial evidence in the record to support the SBOE's ruling that Qwest was entitled to a refund of sales tax?

## FACTS

[¶5] Qwest provides telephone service to customers within Wyoming. Its bills include a federal access line charge called the Customer Access Line Charge (CALC)[1] and a charge for 911 emergency services. The CALC charge is governed by tariffs which require approval by the Federal Communications Commission (FCC). Charges for 911 services are not revenue to Qwest. Instead, they are simply collected by Qwest and then remitted to the taxing authorities. The 911 taxing authorities in Wyoming are the counties; therefore, Qwest tracks the 911 charges by individual county.

[¶6] The DOA audited Qwest's sales and use tax compliance for 1997 through 2001 and the DOR determined that sales tax should have been assessed on the CALC charges. As part of that audit, the DOA requested a list of cumulative CALC charges by county for the audit period. Qwest stated that cumulative CALC charges were not available on either the county or state level. In the absence of that information, the DOA and Qwest agreed to estimate the CALC charges to calculate the amount of sales tax due. Specifically, the auditors estimated the CALC charges by analyzing the relationship between the single line residential CALC charge ($5.00 per line) and the 911 charge ($0.50 per line). The 911 charges were used for the estimate because they were available by county, while the CALC charges were not. The ten to one ratio between the CALC charges and the 911 charges was applied to the total 911 fees remitted by Qwest to the various counties to project the taxable CALC on a county by county basis. The sales tax due was calculated by applying the applicable sales tax rate to the projected CALC. The ratio method was found to be the best information available at that time to determine the amount of sales tax to be assessed.

[¶7] Qwest did not believe the CALC should be subject to sales tax. Consequently, at the conclusion of the 1997–2001 audit and after the DOR assessed the sales tax, Qwest appealed to the SBOE, which ruled the CALC was taxable. Qwest sought judicial review of the SBOE decision. This Court issued a decision on March 22, 2006, ruling that the CALC (referred to in the opinion as the EUCL charge) was not subject to sales tax. *Qwest Corp. v. State ex rel. Wyo. Dep't of Revenue*, 2006 WY 35, 130 P.3d 507 (Wyo.2006) (*Qwest I* ).

[¶8] In the meantime, Qwest started collecting sales tax on the CALC charges in February 2003 as directed by the DOR. In January 2005, the DOA began another sales and use tax audit of Qwest for 2002 through 2004. At first the auditors were focused, among other things, on determining the sales tax due on the CALC charges for 2002 and January 2003. To that end, the DOA reviewed information in Qwest's corporate office, including 911 and CALC charges as shown on a sample of accounts requested by the DOA, and calculated a ratio between the charges comparable to the previous audit. The auditors did not do a similar calculation for the remainder of 2003 or 2004 because Qwest had collected sales tax on the CALC charges during that time period and the auditors believed if a sales tax refund was due, Qwest would know the amount of the refund since it had charged the customers.

[¶9] When the decision in *Qwest I* was issued, Qwest submitted amended tax returns to the DOR seeking a refund of sales tax paid on the CALC charges for February 2003 through 2004. Qwest sought refunds of $60,000 per month, totaling more than a million dollars. Qwest did not, however, submit any supporting documentation to justify the amounts of the refund requests.

[¶10] Because the audit was on-going, the DOR asked the DOA to review Qwest's refund requests. The DOA requested additional information and when Qwest did not submit anything, the DOA determined Qwest

---

1. This charge is also referred to as the End User Common Line Charge (EUCL). The EUCL terminology was used in *Qwest Corp. v. State ex rel. Wyo. Dep't of Revenue*, 2006 WY 35, 130 P.3d 507 (Wyo.2006) (*Qwest I* ). However, because the parties, the SBOE and the district court referred to the charge as CALC in this case, that is the terminology we will use.

was not entitled to refunds for the CALC sales tax because it had not adequately verified its requested refund amounts. The DOR adopted the audit findings and issued a decision denying Qwest's requests for refund of the CALC sales tax.[2]

[¶ 11] Qwest appealed the DOR's decision to the SBOE, arguing that it was entitled to a refund of sales tax on the CALC charges. The SBOE held a contested case hearing. The DOR asserted that it was justified in denying the refunds because, despite specific requests, Qwest had not provided sufficient information to determine the amount of refund, in particular the actual amount of sales tax collected and remitted on the CALC charges by month and by county. Qwest responded that it did not retain data showing the amounts actually collected and the estimate procedure used in the first audit to assess sales tax on CALC charges should have been applied to the sample of accounts requested by, and provided to, the DOA to calculate the refund amounts. Qwest also provided expert testimony calculating the refunds using the estimate methodology. Qwest's expert calculations resulted in an estimate of sales tax paid (and subject to refund) of almost exactly $69,000 per month for February through December 2003 and $65,793 per month for 2004.[3]

[¶ 12] At the end of the hearing, the SBOE issued a stay and encouraged the parties to reach an agreement on the matter. Two months after the hearing concluded, Qwest presented to the DOR, in a supplemental discovery response, records showing the actual sales tax collected on CALC charges by month and county for February 2003 through 2004. Qwest explained that its employees involved with the audit were unaware the sales tax data was maintained by a different Qwest department. The actual sales tax data indicated the amount collected

was similar to, though somewhat higher than, the amounts estimated by Qwest's expert. The DOR requested that the record be supplemented with the new information[4] or, in the alternative, the hearing be reopened so that it could challenge the newly produced evidence and confront the Qwest employees who had claimed such information was not available. The SBOE held a hearing on the motion to supplement and reopen. It ruled that there was a "complete absence of any evidence of bad faith on the part of Qwest in its failure to produce the monthly tax calculations prior to or during the evidentiary hearing in this matter." It granted the motion to supplement and reopened the hearing, but only for the purpose of allowing Qwest to present a plan to distribute the refund to its customers.

[¶ 13] The SBOE subsequently held a hearing to consider Qwest's proposed plan for refunding its customers. The SBOE issued a decision allowing a refund in accordance with the actual sales tax data Qwest ultimately produced and concluding that Qwest's refund plan was "a clearly reasonable and common sense approach to return to the original source, the Wyoming customers of Qwest, the sales tax collected on exempt CALC charges." The SBOE remanded to the DOR for implementation of the refund plan. The DOR petitioned the district court for review of the SBOE decision and that court affirmed. The DOR then appealed to this Court.

### STANDARD OF REVIEW

[¶ 14] When an appeal is taken from a district court's review of an administrative agency's decision, we review the case as if it had come directly from the administrative agency without giving any deference to the district court's decision. *Dutcher v. State ex rel. Wyo. Workers' Safety & Comp. Div.,*

---

2. The DOR's decision after the audit actually resulted in a net credit to Qwest on other matters.

3. It was discovered during the contested case hearing that Qwest's expert had used the wrong tax rates for Campbell and Uinta counties. When the correct tax rates were used, there was a net decrease in the refund calculation of ap-

proximately $3,000 for the February 2003 through 2004 period.

4. The DOR's attorney explained the DOR was not requesting that the SBOE consider the actual sales tax information; instead, it sought to supplement the record to provide proof that the data existed even though Qwest employees had repeatedly informed the DOR/DOA otherwise.

2010 WY 10, ¶ 9, 223 P.3d 559, 561 (Wyo. 2010); *Dale v. S & S Builders, LLC,* 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo.2008). Our review is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2011):

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> > (i) Compel agency action unlawfully withheld or unreasonably delayed; and
> >
> > (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
> >
> > > (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
> > >
> > > (B) Contrary to constitutional right, power, privilege or immunity;
> > >
> > > (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
> > >
> > > (D) Without observance of procedure required by law; or
> > >
> > > (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶ 15]   In accordance with § 16-3-114(c), we review the agency's findings of fact by applying the substantial evidence standard. *Dale,* ¶ 22, 188 P.3d at 561. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bush v. State ex rel. Wyo. Workers' Comp. Div.,* 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo.2005) (citation omitted). *See also Kenyon v. State ex rel. Wyo. Workers' Comp. Div.,* 2011 WY 14, ¶ 11, 247 P.3d 845, 849 (Wyo.2011). " 'Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational

premise for those findings.' " *Kenyon,* ¶ 11, 247 P.3d at 849, quoting *Bush,* ¶ 5, 120 P.3d at 179.  " 'We review an agency's conclusions of law *de novo,* and will affirm only if the agency's conclusions are in accordance with the law.' " *Kenyon,* ¶ 13, 247 P.3d at 849, quoting *Moss v. State ex rel. Wyo. Workers' Comp. Div.,* 2010 WY 66, ¶ 11, 232 P.3d 1, 4 (Wyo.2010); *Dale,* ¶ 26, 188 P.3d at 561-62.

## DISCUSSION

[¶ 16]   This case presents a dilemma harkening back to King Solomon. Each party purports to stand on principle and requests judgment in its favor to vindicate an important public policy. The DOR wants us to protect the integrity of its tax decision making process and the DOA's audit process; Qwest apparently wants us to recognize the difficulty of maintaining voluminous and complex records and to overlook the fact that it failed to produce information which existed and was requested by the DOR/DOA but unknown to the Qwest employees involved with the audit and refund requests. Unfortunately, by becoming entrenched in their respective legal positions, each party has lost sight of the true victim in this case—Wyoming telephone customers who paid a tax they did not owe. Our decision will address the legal questions presented by the parties and, at the same time, provide relief to the customers who are entitled to it.

[¶ 17]   The DOR denied Qwest a refund because it did not provide the actual sales tax data during the audit. Qwest claimed, at the time of the audit and throughout the contested case hearing, that it was entitled to a refund, it did not have the actual tax data, and the DOA should have used the estimate methodology it employed to calculate the tax due in the previous audit to determine the amount of Qwest's refund in this case. The SBOE did not directly address the issue of whether it was appropriate for the DOR to deny Qwest's refund request on the basis that it failed to provide sufficient information to the auditors.

[¶ 18]   To determine whether the DOR had the authority to deny Qwest's refund requests on the basis of insufficient information, we begin with the taxpayer's and the

DOR's respective responsibilities with regard to providing and reviewing data relevant to whether the taxpayer is entitled to a sales tax refund or credit.

[¶ 19] Wyo. Stat. Ann. § 39–15–107(a) (LexisNexis 2009) sets forth the taxpayer's responsibility to retain tax records and provides as follows:

. . . .

(ii) Every vendor and person liable for the payment of sales tax under this article shall preserve for three (3) years at his principal place of business, suitable records and books as may be necessary to determine the amount of tax for which he is liable under this article, together with all invoices and books showing all merchandise purchased for resale. All records, books and invoices shall be available for examination by the department during regular business hours except as arranged by mutual consent;

(iii) If any vendor or person liable for the payment of sales tax under this article fails to comply with paragraph (ii) of this subsection, he shall bear the burden of proof as to the correctness of any assessment of taxes imposed by the department for the period for which records were not preserved in any court action or proceeding[.]

Therefore, sales tax payers have an obligation to preserve tax records and make them available for examination by the DOR and failure to comply with the record retention requirement will result in the taxpayer bearing the burden of proof as to the correctness of the assessment. Consistently, the current DOR Rules require the taxpayer to provide information to support refund claims. *See Wyo. Dep't of Revenue Rules,* Sales and Use Tax, ch. 2, § 10(a), (b) and (c) (2006). Similar rules existed at the time of the audit, assessment and filing of the requests for refund. *See Wyo. Dep't of Revenue Rules,* Sales and Use Tax, Emergency Rules, ch. 2, § 9 (2000).

[¶ 20] Section 39–15–107(a)(ix) requires the DOR to examine each sales tax return and determine if the amount of tax remitted is incorrect. If the amount paid exceeds that which is due, the excess shall be refunded to the taxpayer or credited against subsequent tax liability. Wyo. Stat. Ann. § 39–15–109 (LexisNexis 2011) states in relevant part:

. . . .

(c) Refunds. The following shall apply:

(i) Any tax, penalty or interest which has been erroneously paid, collected or computed shall either be credited against any subsequent tax liability of the vendor or refunded. No credit or refund shall be allowed after three (3) years from the date of overpayment. The receipt of a claim for a refund by the department shall toll the statute of limitations. All refund requests received by the department shall be approved or denied within ninety (90) days of receipt. . . .

(ii) Any tax erroneously paid by a taxpayer shall be refunded by the vendor who originally collected the tax. No cause of action shall lie against the vendor by the taxpayer until not less than sixty (60) days elapse following a request by the taxpayer for a refund from the vendor.

(d) Credits. The following shall apply:

(i) Any tax, penalty or interest which has been erroneously paid, collected or computed shall either be credited against any subsequent tax liability of the vendor or refunded. No credit or refund shall be allowed after three (3) years from the date of overpayment. The receipt of a claim for a refund by the department shall toll the statute of limitations. Any refund or credit erroneously made or allowed may be recovered in an action brought by the attorney general in any court of competent jurisdiction;

. . . .

(iii) As soon as practicable after the return is filed the department shall examine it and if it appears the tax to be remitted is incorrect it shall be recomputed. If the amount paid exceeds that which is due the excess shall be refunded to the vendor or credited against any subsequent liability of the vendor[.]

*See also* Wyo. Stat. Ann. § 39–16–109 (LexisNexis 2011) (similar provisions regarding state use taxes). The clear language of §§ 39–15–107 and 39–15–109 obligates the

DOR to review sales tax returns and refund or credit taxes erroneously paid.[5]

[¶ 21] These provisions do not, however, answer the question of whether a taxpayer can withhold or fail to produce tax information to the DOR/DOA and then have such withheld information considered in a subsequent contested case hearing before the SBOE. That question encompasses many underlying principles and concerns, including the autonomy of the DOR and DOA and the respective roles of those agencies and the SBOE.

[¶ 22] The legislature reorganized the tax system in 1991 and separated the administrative responsibilities of the SBOE and the DOR. *See Union Pacific Resources Co. v. State,* 839 P.2d 356, 363 (Wyo.1992). In *Amoco Prod. Co. v. Wyo. State Bd. of Equalization,* 12 P.3d 668 (Wyo.2000), a natural gas valuation case, we undertook a detailed review of the statutory structure to determine the respective duties and limitations of the DOR and the SBOE:

> The Board is a constitutional body, and the legislature is required to establish a Board of Equalization charged with the duty to equalize the valuation of all property in the state. Wyo. Const. art. 15, §§ 9 & 10. In Wyo. Sess. Laws. ch. 174, §§ 39–1–101, *et seq.* (1991), the legislature created the Department as a separate agency from the Board, and assigned to it administrative functions relating to taxation and revenue that previously had been the responsibilities of the Board. *Union Pacific Resources Co. v. State,* 839 P.2d 356, 363 (Wyo.1992) (*UPRC I*). It specifically charged the Department with the function of valuation of property for purposes of tax assessment, "while the Board 'became an independent quasi-judicial organization with constitutional and statutory duties to equalize valuation and decide disagreements regarding statutory provisions af-

fecting the assessment, levy and collection of taxes.' *UPRC I,* 839 P.2d at 363." *Union Pacific Resources Co. v. State Bd. of Equalization for the State of Wyo.,* 895 P.2d 464, 466 (Wyo.1995) (*UPRC II*). . . .
> [The review or appellate function of the Board] is described in various ways. In Wyo. Stat. Ann. § 39–1–302 (Michie 1997) provision is made for a person aggrieved by a final decision of the Department to appeal to the Board pursuant to the Board's rules and regulations. The statute requires that the Department shall, as specified by the Board's rules and regulations, transmit to the Board the complete record of its action from which the appeal is taken. In a subsequent section of the statute, Wyo. Stat. Ann. § 39–1–304(a), the Board is charged with hearing appeals from county boards of equalization and reviewing final decisions of the Department under the contested case procedures of the Wyoming Administrative Procedure Act. This statutory approach suggests a *de novo* review rather than a record review. In Wyo. Stat. Ann. § 39–1–304(a)(ix), the Board is charged with holding hearings after due notice in the manner and form provided in the Wyoming Administrative Procedure Act and its rules and regulations.
>
> . . . .
>
> Amoco and the Department had agreed that the actual costs should be relied upon instead of the twenty-five percent allowance, but they could not agree as to which costs were to be utilized in connection with the formula. The issue that was properly before the Board was whether Amoco or the Department was correct with respect to those costs, and we previously have acknowledged the authority of the Board to decide that question. *Amax Coal West, Inc. v. Wyoming State Bd. of Equalization,* 896 P.2d 1329, 1334 (Wyo.1995). Instead of adjudicating the dispute between

---

5. The SBOE distinguished between taxpayer and the DOR/DOA obligations with regard to refunds and credits, indicating that a refund request requires supporting documentation while a credit issued during an audit would be applied automatically against the taxpayer's future liability. We do not need to address whether there is a legal distinction between refund requests and

credits as both circumstances existed here. Qwest requested a refund and there was an ongoing audit in which a credit could be allowed. We do note as a practical matter that, under either scenario, the taxpayer is obligated to retain appropriate records and provide the information to the DOR and/or DOA in order for a determination to be made. Section 39–15–107.

Amoco and the Department, however, the Board in this instance determined to arrive at its own valuation. The statutes that we have alluded to earlier are clear with respect to the assignment of the valuation function to the Department, not the Board.

. . . .

**The only way to harmonize the various descriptions of the review or appeal function of the Board is to hold that the Board is limited to an adjudicatory decision making its review on the record. It is only by either approving the determination of the Department, or by disapproving the determination and remanding the matter to the Department, that the issues brought before the Board for review can be resolved successfully without invading the statutory prerogatives of the Department.** The statutory mandate to the Board is not to maximize revenue or to punish nettlesome taxpayers, but to assure the equality of taxation and fairly adjudicate disputes brought before it.

*Id.* at 672–74 (emphasis added).

■ [¶ 23] The *Amoco* decision, with its detailed explanation of the roles of the DOR and SBOE, is more than a decade old. While other changes have been made to the tax system and its sections have been reorganized over the years, the legislature has not made material revisions to the statutory provisions defining the relative responsibilities of the DOR and SBOE. Accordingly, the legislature seems to have concurred with our interpretation of the relevant statutes. As we have said, "[w]hen this Court interprets a statute and the legislature makes no material legislative change in the provision thereafter, the legislature is presumed to acquiesce in the Court's interpretation." *SLB v. JEO*, 2006 WY 74, ¶ 14, 136 P.3d 797, 801 (Wyo. 2006), citing *Bridle Bit Ranch Co. v. Basin Elec. Power Co-op.*, 2005 WY 108, ¶ 22, 118 P.3d 996, 1008 (Wyo.2005). Further, the *Amoco* decision was not made in a vacuum. Earlier decisions had emphasized that, after the statutory reorganization in 1991, the administrative obligations of the DOR and SBOE were separate and distinct. *See, e.g., Amax Coal Co. v. Wyo. State Bd. of Equalization*, 819 P.2d 825, 833 (Wyo.1991); *Exxon*

*Corp. v. Bd. of County Comm'rs, Sublette County*, 987 P.2d 158, 162 (Wyo.1999).

[¶ 24] Applying the teachings of *Amoco* to this case, the SBOE was charged with determining whether the DOR erred by denying Qwest a refund on the grounds that it did not provide the actual sales tax data. It was not charged with determining *de novo*, without any consideration of the state of the record at the time of the assessment decision, whether Qwest was entitled to a refund. *See also Antelope Valley Improvement Serv. Dist. v. State Bd. of Equalization*, 992 P.2d 563 (Wyo.1999), opinion clarified in *Antelope Valley Improvement Serv. Dist. v. State Bd. of Equalization*, 4 P.3d 876 (Wyo.2000), and *Amoco v. Dep't of Revenue*, 2004 WY 89, 94 P.3d 430 (Wyo.2004) (stating the SBOE is required to act as appellate tribunal, not to assume the DOR's responsibility).

[¶ 25] The cases describing the responsibilities of the DOR and SBOE make clear the SBOE's role is limited to considering the factual record which was available to the DOR/DOA during the assessment process. *Airtouch Commun., Inc. v. Dep't of Revenue*, 2003 WY 114, ¶¶ 13, 38–39, 40, 76 P.3d 342 at 348, 356–57 (Wyo.2003) specifically addressed this issue:

The burden is on the taxpayers to provide the information necessary for DOR to prepare an accurate valuation of the properties and to prove at the contested case hearing before SBOE that the methodology used and valuations reached by DOR were not supported by substantial evidence available in the agency record.

. . . .

[T]he burden falls on the taxpayers to prove the value of that property was identifiable and separable from the enhanced value of the business determined through the unitary method. DOR contended the taxpayers failed to carry that burden in two ways. First, they failed to provide DOR with the necessary information to support their claim at the time they filed their annual reports which were the basis for DOR's valuation even though the forms requested such information. Most of the information that formed the basis of the taxpayers' claimed value for the intangi-

bles was available to them at the time they filed the annual report and had been included in the contemporaneous reports they filed with the federal Securities and Exchange Commission. However, not until over a year after the value had been certified to the counties did the taxpayers provide the information to DOR in the form of an independent appraisal. For the 1999 tax year, the taxpayers (excluding Airtouch) did request an informal conference allowed under the rules and asked for a reduction in the valuation for the intangible property. However, they did not identify that property or its value. After that conference, DOR reduced the income portion of the valuation formula by ten percent which resulted in lower valuations. In 2000, none of the taxpayers requested an informal conference because, as they testified, they considered it to be a futile effort.

A striking similarity exists between the failure of the taxpayers in this case to supply the necessary information to support their contentions to DOR during the valuation process and the failure of the taxpayers in *RT Communications* to do the same. As we stated in *RT Communications,* "The Telephone Companies are ill positioned now to complain that DOR failed to perform an analysis when they failed to provide the necessary information." 11 P.3d at 927. While it may be true this failure was due to the evolutionary process of addressing intangible property in the rapidly developing telecommunications business, DOR was not provided information on the separate value of the FCC licenses and the customer lists and cannot be faulted for failing to generate that information on its own especially given the self-reporting nature of Wyoming's tax system as it relates to state assessed property. *Id.;* State Board of Equalization Rules, Ch. 2, § 20; *Amoco Production Company v. Wyoming State Board of Equalization,* 899 P.2d 855, 858 (Wyo. 1995); *Gray v. Wyoming State Board of Equalization,* 896 P.2d 1347, 1350 (Wyo. 1995).

(Footnote omitted.) *See also RT Commun., Inc. v. State Bd. of Equalization,* 11 P.3d

915, 927 (Wyo.2000) (stating that a taxpayer cannot complain about the DOR's valuation when it failed to timely provide information); *Wyo. Dep't of Revenue v. Guthrie,* 2005 WY 79, ¶¶ 35–36, 115 P.3d 1086, 1098 (Wyo.2005) (stating "[t]here are three possible results from an audit: taxpayer's tax liability stays the same; the tax liability is reduced, or the tax liability is increased.... [Taxpayers] can[not] blame the Department for any increased tax liability caused by the reporting practices chosen by [them] that resulted in a self-reported taxable value that [they] could not adequately verify upon request by the Department.").

[¶ 26] Qwest argues, and the SBOE agreed, that the *Airtouch* and *RT Communications* decisions are distinguishable because they concerned state assessment and complex property valuation matters and required expert appraisal of the property. Here, the issues are straightforward and, according to the SBOE, "[n]o state official in this appeal was put to the trouble of preparing any complex calculations to reach conclusions analogous to those required for valuation of state-assessed property." We do not agree with this analysis of our precedent. We were clear in *Airtouch* and *RT Communications* that the taxpayer has the responsibility to provide relevant information to the DOR to enable it to make its calculations. Section 39–15–107(a) and the *Wyo. Dep't of Revenue Rules,* Sales and Use Tax, ch. 2, § 10(a), (b) and (c) (2006) (formerly *Wyo. Dep't of Revenue Rules,* Sales and Use Tax, Emergency Rules, ch. 2, § 9 (2000)) confirm that the same responsibility applies to sales taxpayers. It is impossible for the DOR and DOA to do their jobs without sufficient relevant information.

[¶ 27] Here, the DOR/DOA sought specific information from Qwest, including the amounts of actual sales tax collected on the CALC charges by month and by county. Qwest did not provide that information at the time of the audit. Following the hearing, Qwest revealed the requested information did exist and it wanted to use the information to support its claim that it was entitled to a refund. By allowing the late produced information to be admitted into evidence in the

contested case proceeding, the SBOE denigrated the entire assessment and audit process. The reasons espoused in *Airtouch* and *RT Communications* support prohibiting a sales taxpayer from bringing late information to the SBOE.[6]

[¶ 28] The SBOE stated that a ruling excluding evidence which was not produced by the taxpayer during the audit and prior to the assessment would have prevented Qwest from offering its expert opinion on the proper amount of the refunds using the estimate/ratio procedure employed in the first audit. We disagree. Although the auditors did not have the 911 information for 2003 and 2004, the information was available to them. The Qwest employee who had responsibility for working with the auditors testified that the 911 information for 2003 and 2004 was accessible and she would have provided it to the auditors had they asked for it. A DOA auditor also testified the 2003 and 2004 information was available to the audit team. The auditor stated that he chose not to list the 911 and CALC charges from 2003 and 2004 because he believed actual sales tax data should be used to calculate the refund. The availability of the 911 information is further confirmed because the auditors used 911 data to estimate the sales tax due on the CALC charges for 2002, prior to the issuance of the *Qwest I* decision. They took that information from Qwest's records, incorporated it into a spreadsheet which was admitted as Exhibit 140 at the hearing, and calculated a ratio to determine the sales tax deficiency for 2002.

[¶ 29] Qwest's expert simply took the 911 information for 2003 and 2004 and, like the DOA did with the first audit and for 2002, calculated a ratio and presented that to the SBOE. There is nothing wrong with an expert using information available during an audit and applying his expertise to reach conclusions about the issues at a contested case hearing. That type of analysis is done frequently in administrative hearings. *See, e.g., Sierra Club v. Wyo. Dep't of Envtl. Quality,* 2011 WY 42, ¶¶ 26–29, 251 P.3d 310, 317–18 (Wyo.2011) (demonstrating that the Environmental Quality Council allowed, in administrative hearing proceedings, expert analysis of the information used by the DEQ in reaching its decision). The fact that the DOA did not avail itself of the 2003 and 2004 information in order to perform its own estimate of the amount of sales tax that should be refunded or credited to Qwest does not change the fact that the data was available for such an analysis. Thus, at the time of the audit and assessment, the DOA could have determined a refund amount by using an estimating procedure consistent with the one the DOA employed to determine the amount of tax due in the previous audit and for 2002.

■■■■ [¶ 30] Applying the precedent described above to the facts of this case, we conclude the SBOE erred by allowing Qwest to submit evidence that it did not make available to the auditors. Under the combined teachings of *Amoco* and *Airtouch,* the SBOE should have restricted its decision to the

---

6. There are procedures by which true "newly discovered" evidence may be addressed or considered as part of an administrative proceeding. *See, e.g.,* W.R.C.P. 60(b)(2) and W.R.A.P. 12.08. Each of these rules require some type of showing of good cause for failure to present the evidence earlier, although Rule 12.08 is more flexible in allowing supplementation of agency records than Rule 60's provisions for allowing additional evidence after a trial. *See State ex rel. Wyo. Workers' Safety & Comp. Div. v. Carson,* 2011 WY 61, 252 P.3d 929 (Wyo.2011). These rules were not expressly considered by the SBOE; consequently, we will not determine whether they apply under the circumstances presented here. Furthermore, we seriously doubt whether Qwest could have established good cause for its failure to provide the information to the DOR/DOA. The information was available within the Qwest

organization although the Qwest employees working on the audit were unaware of its existence and availability. A communication problem within the organization does not seem to be a sufficient reason for failing to provide the information to the agencies.

The district court also cited to a SBOE rule which allows it to consider "additional, newly discovered evidence on material issues" when submitted to the SBOE after a hearing but before a decision has been issued. *State Bd. of Equalization Rules,* ch. 2, § 33 (2006). Although this rule does not include an express "good cause" requirement, we conclude that one must be read into the rule or it would allow consideration of all supposedly "newly discovered" evidence and completely undermine the DOR, DOA and SBOE processes, in violation of the statutory roles of each agency.

record existing at the time of the audit and assessment. Nevertheless, the SBOE was correct in ruling that Qwest (and ultimately, its Wyoming telephone customers) was entitled to a refund. Once it was clear the CALC charges were not taxable and Qwest had collected the tax starting in February 2003, the DOR/DOA was required to refund the excess tax to the taxpayer. Section 39–15–109(c) states: "Any tax, penalty or interest which has been erroneously paid, collected or computed **shall** either be credited against any subsequent tax liability of the vendor or refunded." (Emphasis added). The use of the word "shall" in a statute makes the provision mandatory. *See LM v. Laramie County Dep't of Family Servs. (In re MN)*, 2007 WY 189, ¶ 5, 171 P.3d 1077, 1080 (Wyo.2007); *Wilson v. Tyrrell*, 2011 WY 7, ¶ 52, 246 P.3d 265, 279–80 (Wyo.2011).

[¶ 31] Wyo. Stat. Ann. § 39–15–107(a)(iv) states that the DOR should use the best information available to determine an assessment of taxes when the taxpayer has not supplied sufficient information. We see no reason why, when it is clear as it was here that a taxpayer is entitled to a refund, the best information available to the DOR/DOA should not be used to calculate the refund/credit. The DOA had determined that the best information available to calculate the sales tax deficiency for the previous audit was the 911 and CALC ratio. After we ruled in *Qwest I* that the CALC charge was not taxable, Qwest was entitled, as a matter of law, to a refund. Because Qwest was insisting the actual sales tax information was not available, the DOA should have used the same procedure and type of information to calculate the refund as it had previously used to impose the tax, i.e., the 911 and CALC ratio. By refusing to use the data available to it, the DOA/DOR expended significant time and taxpayer money in litigation when it was clear, as a matter of law, the taxpayer was entitled to a refund.

[¶ 32] We are left with the question of the consequences for Qwest's failure to provide the information to the DOA. In one respect Qwest will endure the consequences of failing to provide that information because the amount of refund it will be entitled to using the estimate procedure is less (though not a great deal) than the amount it would have been entitled to had the actual sales tax data been used. The parties do not direct us to any other statutory penalties which may be imposed against a taxpayer that fails to provide data in its possession to the auditors. It may be worth the Wyoming Legislature's time to study the issue to determine whether it believes the DOR/DOA has sufficient statutory authority to compel taxpayers to preserve information and provide it to the taxing authorities and whether some sort of statutory sanction should be imposed for the failure to do so. Such authority could, possibly, prevent a recurrence of this type of litigation which has resulted in a waste of time and taxpayer money.

## CONCLUSION

[¶ 33] We affirm the SBOE's decision that Qwest is entitled to a refund. The SBOE erred, however, by ordering the DOR to use the actual sales tax data which was not provided to the DOA during the audit process to determine the refund amount. The DOR/DOA should have used the best information available to it during the audit, i.e., the 911 and CALC ratio data, to estimate the amount to be refunded to Qwest. We, therefore, remand for a recalculation of the refund amount in accordance with the estimate methodology and the information available to the DOA during the audit. We emphasize that these actions should be taken with haste so the proper amounts may be refunded to Wyoming customers who paid the tax in the first place and continue to bear the burden of the parties' failure to act in the customers' best interests.

[¶ 34] Affirmed in part, reversed in part, and remanded for further proceedings consistent with this decision.