# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 28

**OCTOBER TERM, A.D. 2016**

**March 9, 2017**

| | |
|---|---|
| JOYCE HALLING and MEDCON, INC., a Utah corporation, <br><br> Appellants <br> (Defendants), <br><br> v. <br><br> DAVID A. YOVANOVICH and ORNELLA DALLA BONA, <br><br> Appellees <br> (Plaintiffs). | S-16-0163 |
| DAVID A. YOVANOVICH and ORNELLA DALLA BONA, <br><br> Appellants <br> (Plaintiffs), <br><br> v. <br><br> JOYCE HALLING and MEDCON, INC., a Utah corporation, <br><br> Appellees <br> (Defendants). | S-16-0164 |

*Appeal from the District Court of Lincoln County*
*The Honorable Joseph Bluemel, Judge*

*Representing Joyce Halling and MedCon, Inc.:*
> Ray G. Martineau, Salt Lake City, Utah.

*Representing David A. Yovanovich and Ornella Dalla Bona:*
> James K. Lubing and Laurie J. Stern, Lubing Law Group, LLC, Jackson, Wyoming.*



*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

*Order Allowing Withdrawal and Substitution of Counsel entered September 21, 2016.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    David Halling, as manager of Professional Business Holdings, LP (PBH), and Joyce Halling, as president of MedCon, Inc. (MedCon), each purchased an undivided half interest in a parcel of land in Lincoln County, Wyoming, from Brandon Bentley.  Mr. Halling, individually and as manager of PBH, executed a mortgage in favor of Mr. Bentley on PBH's half interest as security for the purchase price of 50 percent of the lot.  Mrs. Halling, individually and as president of MedCon, also executed a promissory note and mortgage as security for the note in favor of Mr. Bentley for the purchase price of the other 50 percent of the lot.  Mr. Bentley then separately assigned his rights and interests in the PBH Mortgage to 1st Bank of Afton, Wyoming (1st Bank), and his rights and interests in the MedCon Note and MedCon Mortgage to Yovanovich.  Yovanovich sued MedCon, alleging it failed to pay the amount due under the note.  The district court granted Yovanovich's motion for summary judgment and MedCon appeals.  Yovanovich cross-appeals the award of damages.  We affirm the district court's ruling in part, and reverse and remand in part.

## *ISSUES*

[¶2]    The parties raise numerous issues, which we consolidate and restate below:

    1.    Did the district court err as a matter of law when it held that Yovanovich had an enforceable contract right against MedCon?

    2.    Did the district court err as a matter of law when it found that the Yovanovich Assignment was not ambiguous?

    3.    Did the district court abuse its discretion when it denied MedCon's motion for leave to amend its answer?

    4.    Was the district court's damages calculation clearly erroneous?

    5.    Did the district court abuse its discretion when it failed to award prejudgment interest?

    6.    Did the district court err as a matter of law when it failed to award post-judgment interest?

## *FACTS*

[¶3]    David Halling was the manager of PBH.  His wife, Joyce Halling, was the president of MedCon.  In 2007, PBH and MedCon each purchased an undivided half

interest in a parcel of land in Lincoln County, Wyoming, from Brandon Bentley.[1] The Warranty Deed was recorded on September 17, 2007, and the same day Mr. Halling, individually and as manager of PBH, executed a mortgage (PBH Mortgage) of PBH's half interest in Lot 7 as security for PBH's indebtedness of the purchase price of 50 percent of the lot. (Although the PBH Mortgage referenced a promissory note, no promissory note by PBH appears in the record.) The PBH Mortgage was recorded on September 17, 2007.

[¶4] In 2008, Mr. Bentley assigned all of his rights, title, and interest in PBH's half interest in Lot 7 to 1st Bank (1st Bank Assignment). The 1st Bank Assignment identified the PBH Mortgage and any property covered by the mortgage as the collateral, and referred to the book and page number where the PBH Mortgage was recorded. It did not reference MedCon's half interest in Lot 7. The 1st Bank Assignment was recorded on July 11, 2008. By December 2010, PBH and Mr. Halling had failed to make any payments to 1st Bank and entered into a deed in lieu of foreclosure, pursuant to which PBH and Mr. Halling conveyed PBH's half interest in Lot 7 to 1st Bank, in exchange for which 1st Bank released PBH and Mr. Halling from all obligations on the PBH Note and Mortgage. The deed in lieu of foreclosure was recorded on February 19, 2013.

[¶5] When Mr. Halling and PBH executed the deed in lieu of foreclosure with 1st Bank in 2010, Mrs. Halling, individually and as the president of MedCon, also signed the deed, assigning any and all interests MedCon had in Lot 7 to 1st Bank:

> That pursuant to that certain Warranty Deed dated September 11, 2007, and recorded in the office of the Lincoln County Clerk on September 17, 2007, in Book 672, page 342, Recording No. 933171, Med Con, Inc., a Utah corporation, may own or claim to own an interest in the Property. Med Con, Inc., whose president is Joyce L. Halling, the spouse of David F. Halling, is a related entity to Mortgagor herein. In consideration of the release from liability by 1ST Bank

---

[1] By a Warranty Deed, Mr. Bentley conveyed and warranted to:

> Med Con, Inc., a Utah Corporation an undivided 50% interest and Professional Business Holdings, LP, a Utah Limited Partnership, an undivided 50% interest, as tenants in common grantee(s), . . . the following described real estate, situate in Lincoln County and State of Wyoming, to wit:

> Lot 7 of the Estates At Valli-Vu, Lincoln County, Wyoming as described on the official plat filed on December 1, 2006 as instrument No. 924974 of the records of the Lincoln County Clerk.

2

herein, Med Con., Inc., will join in this agreement and convey to 1ST Bank any and all interest it may have in the Property. Therefore, for purposes of this agreement, the conveyance of the Property to 1ST Bank and the release from liability of David F. Halling, individually, Professional Business Holdings, LP, Joyce L. Halling, individually, and Med Con, Inc., by 1ST Bank, the terms Mortgagor and Grantor as used herein shall be deemed to also include Joyce L. Halling, individually, and Med Con, Inc.

[¶6]    Mr. Halling testified during his deposition that at the time he and Mrs. Halling signed the deed it "was my understanding and my understanding from the bank that [1st Bank] would release us from any and all liabilities relative to the total property."  1st Bank, however, had no interest in MedCon's undivided half interest to release.

[¶7]    When it purchased its half interest in Lot 7, MedCon executed a promissory note (MedCon Note), promising to pay Mr. Bentley the $124,520.00 purchase price.  The MedCon Note provided that full payment of the loan would be due on August 17, 2009, would "accrue @ 6% monthly," and that no payments were required during the term of the loan.  Mrs. Halling, individually and as president of MedCon, also executed a mortgage (MedCon Mortgage) of MedCon's half interest in Lot 7 as security for the MedCon Note.  The MedCon Mortgage was recorded on September 17, 2007.

[¶8]    In October 2008, Mr. Bentley assigned all of his rights, title, and interest in the MedCon Note (Yovanovich Assignment) to David A. Yovanovich and Ornella Dalla Bona (collectively "Yovanovich").  Two years later, Mr. Bentley executed an Assignment of Mortgage, assigning Yovanovich all of his rights, title, and interest in the MedCon Mortgage.  No payments were made on the MedCon Note.

[¶9]    In 2014, Yovanovich, as holder of the MedCon Note and MedCon Mortgage, attempted to collect on the indebtedness, and when the attempts were unsuccessful, sued for breach of contract seeking judgment on the MedCon Note.  Yovanovich moved for summary judgment, and MedCon opposed the motion, arguing genuine issues of material fact existed as to: (1) whether the Yovanovich Assignment created a lawfully enforceable contract between Yovanovich and MedCon; (2) whether the Yovanovich Assignment was null and void because Mr. Bentley had previously assigned all of his rights in MedCon's half interest in Lot 7 to 1st Bank via the 1st Bank Assignment; (3) whether the deed in lieu of foreclosure released MedCon from any liability related to its half interest in Lot 7; and (4) whether Yovanovich was entitled to damages.

[¶10]  The district court found that: (1) the Yovanovich Assignment created a legally enforceable contract between Yovanovich and MedCon; (2) the 1st Bank Assignment only included Mr. Bentley's rights and interests in PBH's half interest in Lot 7; (3)

3

although the Hallings believed the deed in lieu of foreclosure released MedCon from its payment obligations related to Lot 7, it only released PBH and Mr. Halling; and (4) MedCon breached the contract by failing to make any payments on the MedCon Note and therefore Yovanovich was entitled to damages. Based on these findings, the district court granted Yovanovich's motion and awarded damages in the amount of $140,353.00, which represented the original loan amount, plus interest at an annual rate of 6 percent, accruing monthly for the two-year period of the MedCon Note.

[¶11] After the district court granted summary judgment, MedCon moved to amend its answer pursuant to Rule 15 of the Wyoming Rules of Civil Procedure. MedCon contended that because the district court found that MedCon did not release its undivided half interest to 1st Bank when Mrs. Halling and MedCon signed the deed in lieu of foreclosure, it had a right to assert a counterclaim against Yovanovich, claiming a competing interest in Lot 7. The district court denied MedCon's motion to amend. MedCon timely appealed the grant of summary judgment and denial of its motion to amend and Yovanovich cross-appealed the district court's calculation of damages.

## STANDARD OF REVIEW

[¶12] We review a grant of summary judgment deciding a question of law de novo. *Sky Harbor Air Serv., Inc. v. Cheyenne Reg'l Airport Bd.*, 2016 WY 17, ¶ 40, 368 P.3d 264, 272 (Wyo. 2016). In doing so, "We review a summary judgment in the same light as the district court, using the same materials and following the same standards." *Thornock v. PacifiCorp*, 2016 WY 93, ¶ 10, 379 P.3d 175, 179 (Wyo. 2016) (quoting *Rogers v. Wright*, 2016 WY 10, ¶ 7, 366 P.3d 1264, 1269 (Wyo. 2016)). "No deference is accorded to the district court on issues of law, and we may affirm the summary judgment on any legal grounds appearing in the record." *Cont'l Western Ins. Co. v. Black*, 2015 WY 145, ¶ 13, 361 P.3d 841, 845 (Wyo. 2015). "The summary judgment can be sustained only when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law." *Id.* To the extent the issues require us to use a different standard of review, we explain that in our discussion.

## DISCUSSION

### I. Did the district court err as a matter of law when it held that Yovanovich had an enforceable contract right against MedCon?

[¶13] The district court ruled that there was an enforceable contract between Yovanovich and MedCon, and that MedCon breached the agreement by failing to pay Yovanovich the amount due under the MedCon Note. "The elements for a breach of contract claim consist of a lawfully enforceable contract, an unjustified failure to timely perform all or any part of what is promised therein, and entitlement of injured party to damages." *Schlinger v. McGhee*, 2012 WY 7, ¶ 12, 268 P.3d 264, 268 (Wyo. 2012), *as amended on reh'g* (Feb. 7, 2012) (quoting *Reynolds v. Tice*, 595 P.2d 1318, 1323 (Wyo. 1979)).

4

[¶14]  MedCon first contends that no lawfully enforceable contract exists because Mr. Bentley previously had assigned any rights he had under the MedCon Note and MedCon Mortgage to 1st Bank via the 1st Bank Assignment, making the Yovanovich Assignment a nullity.  The district court found that the Yovanovich Assignment was enforceable because Mr. Bentley transferred only his interest in PBH's undivided half interest in the 1st Bank Assignment, and did not include MedCon's half interest.

[¶15]  Mr. Bentley's 2007 transaction with the Hallings, PBH, and MedCon created two separate and distinct interests in Lot 7, making PBH and MedCon tenants in common.

> A tenancy in common is generally defined as the holding of property by several persons by several and distinct titles, with unity of possession only.  Stated another way, a tenancy in common is a form of ownership in which each cotenant owns a separate fractional share of undivided property.  Each cotenant's title is held independently of the other cotenants.

86 C.J.S. *Tenancy in Common* § 1 (February 2017 update); *see also Sharples Corp. v. Sinclair Wyo. Oil Co.*, 62 Wyo. 341, 358, 167 P.2d 29, 34 (1946) ("Their estates are legal and several; the only union between them being that of possession.").  "Tenants in common may each unilaterally alienate their shares through sale or gift or place encumbrances upon these shares." *United States v. Craft*, 535 U.S. 274, 280, 122 S.Ct. 1414, 1421, 152 L.Ed. 2d 437 (2002).

[¶16]  MedCon encumbered its interest separate from PBH's encumbrance of its interest, and the plain language of the 1st Bank Assignment supports the finding that Mr. Bentley assigned only his interest in PBH's undivided half interest to 1st Bank.  The 1st Bank Assignment identified the PBH Mortgage and any property covered by the mortgage as the collateral, and referred to the book and page number where the PBH Mortgage was recorded.  David Halling, individually and as manager of PBH, consented to the 1st Bank Assignment as evidenced by his signature.  There is no reference to Joyce Halling, MedCon, or Mr. Bentley's rights in MedCon's half interest in Lot 7 in the 1st Bank Assignment.  Mr. Bentley retained his interests in MedCon's half interest in Lot 7, and properly assigned it to Yovanovich.  We affirm the district court's entry of summary judgment, finding that a lawfully enforceable contract existed between Yovanovich and MedCon.

[¶17]  MedCon next argues that because the 1st Bank Assignment was recorded prior to the Yovanovich Assignment, Yovanovich had notice that Mr. Bentley previously had assigned all of his interests in Lot 7, and the 1st Bank Assignment takes precedence over the Yovanovich Assignment.  MedCon relies on Wyo. Stat. Ann. § 34-1-121(a), which states in part:

5

> (a) Each and every deed, mortgage, instrument or conveyance touching any interest in lands, made and recorded, according to the provisions of this chapter, shall be notice to and take precedence of any subsequent purchaser or purchasers from the time of the delivery of any instrument at the office of the county clerk, for record.

Wyo. Stat. Ann. § 34-1-121(a) (LexisNexis 2015). "[T]he primary purpose of our recording statute is to secure certainty of title," *Countrywide Home Loans, Inc. v. First Nat'l Bank of Steamboat Springs, N.A.*, 2006 WY 132, ¶ 22, 144 P.3d 1224, 1231 (Wyo. 2006), "by publicity of other conveyances, and a grantee should seasonably record the instrument conveying property to him in order to effectuate this purpose." *Condos v. Trapp*, 717 P.2d 827, 832 (Wyo. 1986), *on reh'g*, 739 P.2d 749 (Wyo. 1987). As we discussed, Mr. Bentley's 2007 transaction with the Hallings, PBH, and MedCon created two separate and distinct interests in Lot 7. *See supra* ¶¶ 15-16. The recording statute does not transform two separate interests in property into one, nor would it have any effect on the two separate promissory notes. We affirm the district court's entry of summary judgment, finding that there is no issue over whether the 1st Bank Assignment took precedence over the Yovanovich Assignment.

## II.   Did the district court err as a matter of law when it found that the Yovanovich Assignment was not ambiguous?

[¶18]  MedCon argues that the Yovanovich Assignment is ambiguous and therefore did not assign the MedCon Note to Yovanovich. The Yovanovich Assignment states in relevant part:

> . . . all rights, title and interest in and to that certain Promissory Note dated Aug 17, 2007, in the original principal amount of $124,520.00, executed by DAVID F. HALLING, JOYCE L. HALLING and MED CON, INC., as Makers, which is payable to the order of Assignor.

MedCon contends that "[T]he plain language of [this] Assignment specifically transfers to [Yovanovich] an interest in a note signed by David F. Halling . . . ." The MedCon Note is not executed by David F. Halling. Yovanovich argues that the inclusion of David Halling's name was a simple error and did not create an ambiguity, and even if it did create an ambiguity, the intent of the parties was discernible by the extrinsic evidence in the record.

[¶19]  "Assignments are contracts and are interpreted in accordance with the rules of contract interpretation." *Comet Energy Servs., LLC v. Powder River Oil & Gas Ventures*,

*LLC*, 2010 WY 82, ¶ 13, 239 P.3d 382, 386 (Wyo. 2010) (citing *Boley v. Greenough*, 2001 WY 47, ¶ 11, 22 P.3d 854, 858 (Wyo. 2001)). "Whether a term in a contract is ambiguous is a matter of contract interpretation." *Winter v. Pleasant*, 2010 WY 4, ¶ 9, 222 P.3d 828, 833 (Wyo. 2010).

> Our primary focus in construing or interpreting a contract is to determine the parties' intent, and our initial inquiry centers on whether the language of the contract is clear and unambiguous. If the language of the contract is clear and unambiguous, then we secure the parties' intent from the words of the agreement as they are expressed within the four corners of the contract. Common sense and good faith are leading precepts of contract construction, and the interpretation and construction of contracts is a matter of law for the courts.

*Id.* at ¶ 9, 222 P.3d at 834 (quoting *Cent. Wyo. Med. Lab., LLC v. Med. Testing Lab, Inc.*, 2002 WY 47, ¶ 16, 43 P.3d 121, 127 (Wyo. 2002) (internal citations omitted). "Even if there [is] an ambiguous term or portion of the contract, extrinsic evidence is not considered if the meaning of the ambiguous term or portion of the contract can be ascertained from other language of the contract, i.e., from the contract as a whole." *Amoco Prod. Co. v. Stauffer Chem. Co. of Wyo.*, 612 P.2d 463, 466 (Wyo. 1980).

[¶20] The Yovanovich Assignment references the MedCon Note, and the district court appropriately determined the parties' intent from both documents. *Prudential Preferred Properties v. J & J Ventures, Inc.*, 859 P.2d 1267, 1271 (Wyo. 1993) ("[E]ach document before the court represents an integrated contract requiring the court to construe the parties' intent from the terms of that particular agreement."); s*ee also Hensley v. Williams*, 726 P.2d 90, 94 (Wyo. 1986) ("A written agreement may consist of more than one document, and reference in a contract to extraneous writings renders them part of the agreement."). We agree with the district court that, reading the integrated contract as a whole, the parties' intent is clear: Mr. Bentley assigned the MedCon Note to Yovanovich, the MedCon Note is dated August 17, 2007, for the sum of $124,520.00, and is executed by Mrs. Halling, individually and as President of MedCon. No other promissory note is part of the record. The inclusion of Mr. Halling's name in the Yovanovich Assignment did not create an obscure or double meaning to make the assignment ambiguous. *Whitney Holding Corp. v. Terry*, 2012 WY 21, ¶ 41, 270 P.3d 662, 674 (Wyo. 2012) ("A contract is ambiguous if indefiniteness of expression or double meaning obscures the parties' intent." (citation omitted)). A review of extrinsic evidence is not necessary because there is no ambiguity. *Amoco Prod.*, 612 P.2d at 466.

[¶21] MedCon also claims that the district court erred by placing the burden on MedCon to produce evidence of a note signed by Mr. Halling when it held that "[MedCon] did not

include, in any of their materials submitted in opposition to the motion for summary judgment, any note signed by Mr. Halling." MedCon fails to provide any citations to relevant rules or case law supporting its position, and in fact Wyoming law is contrary to MedCon's position:

> The party requesting a summary judgment bears the initial burden of establishing a prima facie case for summary judgment. If he carries his burden, "the party who is opposing the motion for summary judgment must present specific facts to demonstrate that a genuine issue of material fact exists." [*Christensen v. Carbon County*, 2004 WY 135, ¶ 8, 100 P.3d 411, 413 (Wyo. 2004) (quoting *Metz Beverage Co. v. Wyoming Beverages, Inc.*, 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo. 2002)).] We have explained the duties of the party opposing a motion for summary judgment as follows:
>
>> "After a movant has adequately supported the motion for summary judgment, the opposing party must come forward with competent evidence admissible at trial showing there are genuine issues of material fact. The opposing party must affirmatively set forth material, specific facts in opposition to a motion for summary judgment, and cannot rely only upon allegations and pleadings . . . , and conclusory statements or mere opinions are insufficient to satisfy the opposing party's burden."

*Rice v. Collins Commc'n, Inc.*, 2010 WY 109, ¶ 8, 236 P.3d 1009, 1013 (Wyo. 2010) (citations omitted). Once Yovanovich carried the initial burden of establishing a prima facie case for summary judgment, MedCon had an affirmative duty to produce specific evidence in opposition to the motion, and MedCon failed to meet its burden. There are no disputed issues of material fact that the Yovanovich Assignment is unambiguous, and we affirm the district court's findings.

### III. Did the district court abuse its discretion when it denied MedCon's motion for leave to amend its answer?

[¶22] After the district court issued summary judgment in favor of Yovanovich, MedCon moved to amend its answer pursuant to W.R.C.P. 15(a).[2] A district court is

---

[2] A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served, or if the pleading is one to

vested with broad discretion to determine whether to allow amendment to pleadings. *Voss v. Goodman*, 2009 WY 40, ¶ 14, 203 P.3d 415, 420 (Wyo. 2009). That decision is "reviewed for an abuse of discretion, and it will be reversed only for an abuse of discretion shown by clear evidence." *Guy v. Lampert*, 2015 WY 148, ¶ 14, 362 P.3d 331, 335 (Wyo. 2015). "Our touchstone inquiry in determining whether a court abused its discretion is whether the trial court could have reasonably concluded as it did." *Gould v. Ochsner*, 2015 WY 101, ¶ 39, 354 P.3d 965, 977 (Wyo. 2015) (quoting *Lavitt v. Stephens*, 2015 WY 57, ¶ 13, 347 P.3d 514, 518 (Wyo. 2015)). The appropriate test to be applied by the district court when determining whether to grant a motion to amend is:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Voss*, 2009 WY 40, ¶ 14, 203 P.3d at 420-21 (citations omitted). Any one of the above-stated factors gives a district court reason to deny a motion to amend. *Retz v. Siebrandt*, 2008 WY 44, ¶¶ 7-8, 181 P.3d 84, 88-89 (Wyo. 2008); *see also Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) ("It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend.").

[¶23] Our review is hindered by the absence of any district court order in the record denying MedCon's motion. *Forbes v. Forbes*, 2015 WY 13, ¶ 37, 341 P.3d 1041, 1053 (Wyo. 2015) ("[O]ur job becomes complicated when we are presented with a judgment which fails to articulate clearly the reasoning behind it." (citation omitted)). However, "[W]e must affirm on appeal if there exists any legally valid ground which appears in the record supporting the judgment." *Id.*

[¶24] MedCon sought leave to amend its answer to assert a counterclaim against Yovanovich, claiming a competing interest in Lot 7. MedCon argued that because the district court ruled on summary judgment that MedCon had not released its interest in Lot 7 via the deed in lieu of foreclosure, it was entitled to assert a competing claim in the

---

> which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

W.R.C.P. 15(a).

property against Yovanovich. Yovanovich objected, arguing that there was no good cause for the motion, the motion was the product of undue delay, granting the motion would have been highly prejudicial to Yovanovich, and the claim was futile.

[¶25] MedCon filed its initial answer on June 18, 2015, and did not move to amend it until May 2, 2016, after the district court ordered summary judgment in favor of Yovanovich. In *Ekberg v. Sharp*, Ekberg sought to amend his complaint after the district court issued its partial summary judgment ruling in favor of Sharp. 2003 WY 123, ¶¶ 11-15, 76 P.3d 1250, 1254-55 (Wyo. 2003). Ekberg claimed that he "could not have envisioned requesting damages for loss of business income and loss of use of enjoyment of the property until the district court issued its order granting partial summary judgment . . . ." *Id.* at ¶ 14, 76 P.3d at 1254-55. The district court denied Ekberg's request, and this Court upheld the denial, holding that Ekberg "should have contemplated the damages which reasonably flow from his asserted breach of contract claim." *Id.* at ¶ 14, 76 P.3d at 1255. The same is true for MedCon. In its own response to Yovanovich's demand letter prior to this lawsuit, MedCon restated Yovanovich's position, "Y&B . . . now seek to recover on Note I and Mortgage I on the theory that they have never been assigned or foreclosed," and there was "no evidence that the $124,520.00 mortgage on the property was taken by the bank pursuant to this property transfer." MedCon should have contemplated that the district court could find in favor of Yovanovich on its theory and tailored its response accordingly. MedCon failed to provide good cause why it did not include its proposed counterclaim with its first answer, or why it did not move to amend prior to the district court entering summary judgment. MedCon waited until after a final order was entered to file its motion to amend, causing undue delay under these circumstances.

[¶26] In addition to the timeliness issues, MedCon's proposed counterclaim fails to add 1st Bank as a party to the action, rendering its attempt to amend futile. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment." *Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001); *see also Bennie v. Munn*, No. 4:11CV3089, 2012 WL 1574453, at *2 (D. Neb. May 3, 2012) ("Leave to amend should be denied as futile 'where the proposed amendment would not cure the defect the party sought to correct.'" (internal citation omitted)). MedCon's proposed counterclaim centers around the deed in lieu of foreclosure executed between 1st Bank, David Halling, and Joyce Halling, making the joinder of 1st Bank necessary, and without it, the claim is futile. The district court did not abuse its discretion when it denied MedCon leave to amend and we affirm the decision.

### IV. *Was the district court's damage calculation clearly erroneous?*

[¶27] In its cross-appeal, Yovanovich argues that the district court incorrectly calculated the damages by calculating the interest to accrue annually instead of monthly, which

"essentially erased $163,475 of contractually agreed interest on the promissory note." The relevant terms of the MedCon Note are:

> 1. This loan shall become due and payable twenty four (24) months from the date of this Note, which is August 17, 2009. Note shall accrue @ 6% monthly.

Yovanovich contends:

> [b]y its plain reading, this language can only be read one way: the principal amount of the loan is $124,520.00, and each month, 6% of this total—or $7,471.20—is added to the principal amount for a period of 24 months. As such, at the end of 24 months, the total amount due should have been $303,828.80.

[¶28] "The issue of whether the district court employed the proper methodology or legal standard to calculate the damages award is an issue of law, which we review *de novo*." *Knight v. TCB Constr. & Design, LLC*, 2011 WY 27, ¶ 16, 248 P.3d 178, 183 (Wyo. 2011) (citing *Cross v. Berg Lumber Co.*, 7 P.3d 922, 931 (Wyo. 2000)). "However, assuming that the district court applied the appropriate methodology to calculate damages, the district court's damages calculation is a question of fact, which we review" under a clearly erroneous standard. *Id.* (citing *Velasquez v. Chamberlain*, 2009 WY 80, ¶ 27, 209 P.3d 888, 895 (Wyo. 2009)). A finding is "clearly erroneous even though there is evidence to support it, if after a review of the entire record, the court is left with the definite and firm conviction that a mistake has been committed." *Keever v. Payless Auto Sales, Inc.*, 2003 WY 147, ¶ 7, 79 P.3d 496, 498 (Wyo. 2003) (internal quotation marks and citation omitted). The district court interpreted "Note shall accrue @ 6% monthly" to mean 6 percent annual interest compounded monthly, and found that "[r]easonable minds cannot disagree that [MedCon] owe[s] a total balance of principal and interest of $140,353.00 under the note."

[¶29] Yovanovich claims that the terms of the MedCon Note are clear and unambiguous and the district court's interpretation is contrary to the plain, unambiguous terms of the contract. Yovanovich argues that the use of the word "monthly" is in reference to the interest rate, and that "the note—not the interest rate—accrues monthly." This argument confuses the terms "accrual" with "interest rate." "Accrue" means "[t]o accumulate periodically; to increase over a period of time <the savings-account interest accrues monthly>." Black's Law Dictionary 25 (10th ed. 2014). It is not the note itself that accrues; it is the interest that accrues. "Accrued interest" is "[i]nterest that is earned but not yet paid." Black's Law Dictionary 935 (10th ed. 2014). In contrast, "interest rate" is "[t]he percentage of an amount of money which is paid for its use for a specified time," and is "[c]ommonly expressed as an annual percentage rate (APR)." Black's Law

Dictionary 813 (6th ed. 1990).  As the district court correctly found, "Note shall accrue @ 6% monthly" meant the 6 percent annual interest rate accrued monthly, it did not convert an annual percentage rate to a monthly one.  The district court's interest calculation is not clearly erroneous.

## V.   Did the district court abuse its discretion when it failed to award prejudgment interest?

[¶30]   Yovanovich argues on cross-appeal that the district court erred when it failed to award prejudgment interest.  The district court awarded Yovanovich $140,353.00, which is the $124,520.00 loan, plus the 6 percent annual interest rate, accruing monthly, for the two-year period of the MedCon Note.  That was the full amount due at the time the MedCon Note expired on August 17, 2009.  The district court awarded no interest for the period from August 17, 2009 to April 4, 2016, the date it entered the judgment.  "[T]he question of whether a judge *is entitled to* award prejudgment interest in a particular case is a question of law that we review *de novo*, while the question of whether prejudgment interest *should be* awarded is reviewed for an abuse of discretion."  *KM Upstream, LLC v. Elkhorn Constr., Inc.*, 2012 WY 79, ¶ 44, 278 P.3d 711, 727 (Wyo. 2012) (emphasis in original).  "Prejudgment interest is allowed on the theory that an injured party should be fully compensated for his or her loss."  *Stewart Title Guar. Co. v. Tilden*, 2008 WY 46, ¶ 28, 181 P.3d 94, 103 (Wyo. 2008) (citation omitted).  We have said that "parties are entitled to the use of money owed them, that 'the use of money has real economic value,' and that '[p]rejudgment interest should [be] awarded as an attempt to compensate for that loss.'"  *Id.* (quoting *Goodwin v. Upper Crust of Wyo., Inc.*, 624 P.2d 1192, 1198 (Wyo. 1981)).

[¶31]   "Prejudgment interest is available if a two-part test is met: (1) the claim must be liquidated, as opposed to unliquidated, meaning it is readily computable via simple mathematics; and (2) the debtor must receive notice of the amount due before interest begins to accumulate."  *KM Upstream, LLC*, 2012 WY 79, ¶ 45, 278 P.3d at 727; *see also Tilden*, 2008 WY 46, ¶ 28, 181 P.3d at 103-04 (Prejudgment interest "is appropriate when the underlying recovery is compensatory in nature and when the amount at issue is easily ascertainable and one upon which interest can be easily computed." (citation omitted)); *O's Gold Seed Co. v. United Agri-Products Fin. Servs., Inc.*, 761 P.2d 673, 677 (Wyo. 1988) ("Prejudgment interest is recoverable in Wyoming on liquidated claims but not on unliquidated claims, with a liquidated claim being defined as one that is readily computable by basic mathematical calculation.").

[¶32]   In *Pennant Serv. Co. v. True Oil Co., LLC*, 2011 WY 40, ¶ 35-41, 249 P.3d 698, 711-12 (Wyo. 2011), we reversed when the district court refused to award prejudgment interest on a liquidated sum in a breach of contract case where the opposing party had notice of the amount sought.  Here, the amount sought to be recovered was a sum certain, and MedCon had notice of the debt prior to the district court granting Yovanovich

summary judgment. Although we may affirm the district court's ruling on any legal basis appearing in the record, we find no basis for the district court's failure to award prejudgment interest.

[¶33] MedCon does not contend that Yovanovich is not entitled to prejudgment interest, but it argues that Yovanovich failed to request it in the complaint, and therefore is not entitled to it. However, Rule 54 of the Wyoming Rules of Civil Procedure states in part:

> (c) *Demand for Judgment.*—A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, ***every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings***.

W.R.C.P. 54 (emphasis added). Under this rule, a party does not waive its request for prejudgment interest by omitting the request from pretrial submission. *See Equal Emp't Opportunity Comm'n v. Massey-Ferguson, Inc.*, 622 F.2d 271, 277 (7th Cir. 1980) ("Rule 54(c) of the Federal Rules of Civil Procedure allows the district court to award the relief to which a prevailing party is 'entitled' regardless whether such relief was sought in the complaint."); *see also Kahan v. Rosenstiel*, 424 F.2d 161, 174 (3d Cir. 1970) ("Plaintiff's complaint does not specifically ask for equitable relief; it contains only the general request for 'further relief as may be just.' Nonetheless, under Rule 54(c) of the Federal Rules of Civil Procedure, a court may have awarded any relief appropriate under the circumstances.").[3]

[¶34] Yovanovich asserts it is entitled to the statutory rate of 7 percent for prejudgment interest. Wyo. Stat. Ann. § 40-14-106(e) (LexisNexis 2015) provides, "[i]f there is no agreement or provision of law for a different rate, the interest of money shall be at the rate of seven percent (7%) per annum." The parties agreed to 6 percent annual interest accruing monthly during the two-year term of the MedCon Note, but failed to specify the rate to be applied after the maturity of the note. Some jurisdictions find that when an obligation is payable at a future date with an agreed upon interest rate, but fail to provide a rate to apply after maturity, the statutory rate of interest will apply after maturity. *See Holden v. Freedman's Sav. & Trust Co.*, 100 U.S. 72, 74, 25 L.Ed. 567 (1879) (finding that when an agreement of the parties extends no further than to the time fixed for the payment of the principal, if payment is not made when the money becomes due, the legal

---

[3] "Since the Wyoming Rules of Civil Procedure are patterned after their federal counterparts, "we have found federal court interpretations of their rules highly persuasive for interpretations of our corresponding rules." *Grove v. Pfister*, 2005 WY 51, ¶ 9, 110 P.3d 275, 279 (Wyo. 2005).

rate of interest will then apply); *Buckley v. Buckley*, 133 A.2d 604, 606 (Conn. 1957) (Agreed upon interest rate of 4 percent applied up until date of maturity, thereafter, statutory rate of 6 percent applied); *Metro. Sav. Bank v. Tuttle*, 49 N.E.2d 983, 984 (N.Y. 1943) ("After maturity, in the absence of other agreement, the interest is computed as damages according to the rate then prescribed by law, whether that is more or less than the contract rate."). Other jurisdictions have found that when an obligation is silent as to the rate to be paid after maturity, the stipulated rate continues in effect. *See Astoria Fed. Sav. & Loan Ass'n v. Rambalakos*, 372 N.Y.S.2d 689, 690 (N.Y. App. Div. 1975) ("[T]he contract rate, rather than the statutory rate, governs the rate of interest after maturity and before judgment."); *Petroscience Corp. v. Diamond Geophysical, Inc.*, 684 S.W.2d 668, 668 (Tex. 1984) ("[U]nder Texas law, when a note specifies a rate of interest before maturity but is silent about any rate after maturity, the prematurity rate is implied as the post-maturity rate."); *Town of Ohio v. Frank*, 103 U.S. 697, 698, 26 L.Ed. 531 (Ohio 1880) ("[A] note given for a sum of money, bearing interest at a given rate per month, continues to bear that rate of interest as long as the principal remains unpaid.").

[¶35] We agree with the latter approach. In a question of statutory interpretation, our primary goal is to give effect to the legislature's intent. *L & L Enters. v. Arellano* (*In re Arellano*), 2015 WY 21, ¶ 13, 344 P.3d 249, 252 (Wyo. 2015). "Where legislative intent is discernible a court should give effect to the 'most likely, most reasonable, interpretation of the statute, given its design and purpose.'" *Adekale v. State*, 2015 WY 30, ¶ 12, 344 P.3d 761, 765 (Wyo. 2015) (quoting *Rodriguez v. Casey*, 2002 WY 111, ¶ 20, 50 P.3d 323, 329 (Wyo. 2002)). Wyo. Stat. Ann. § 40-14-106(e) provides the rate to be applied in the absence of an agreement or provision of law. Here, the parties have agreed to an interest rate, and there is no absence of an agreement such that the statutory interest rate should fill the void. We remand for an award of prejudgment interest consistent with the law outlined above.

### VI. Did the district court err as a matter of law when it failed to award post-judgment interest?

[¶36] The purpose of post-judgment interest is to "compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damages and the payment by the defendant." *Dorr v. Smith, Keller & Assocs.*, 2010 WY 120, ¶ 13, 238 P.3d 549, 552 (Wyo. 2010). The parties agreed to a 6 percent annual interest rate accruing monthly, and for the reasons discussed *supra* ¶¶ 34, 35, the rate of interest on the decree or judgment shall correspond to the terms of the contract.

[¶37] Yovanovich asserts that the district court also erred when it failed to award post judgment interest. Wyo. Stat. Ann. § 1-16-102 (LexisNexis 2015) provides in part:

> **§ 1-16-102. Interest on Judgments.**
>     (a) Except as provided in subsections (b) and (c) of this section, all decrees and judgments for the payment of

money shall bear interest at ten percent (10%) per year from the date of rendition until paid.

(b) If the decree or judgment is founded on a contract and all parties to the contract agreed to interest at a certain rate, the rate of interest on the decree or judgment shall correspond to the terms of the contract.

"The use of the word 'shall' in a statute makes the provision mandatory." *Wyo. Dep't of Revenue v. Qwest Corp.*, 2011 WY 146, ¶ 30, 263 P.3d 622, 632 (Wyo. 2011).[4] All decrees and judgments for the payment of money bear post-judgment interest. *Parker v. Artery*, 889 P.2d 520, 527 (Wyo. 1995) ("In Wyoming, statutory interest begins to accrue when a judgment is entered."). Post-judgment interest is available under Wyo. Stat. Ann. § 1-16-102(a) and (b) whether it is stated in the judgment or not. It would be helpful to the parties, as well as this Court, if the district court identified the post-judgment rate of interest in its order if that rate differs from the statutorily prescribed rate, although not required. Thus, there was no error in the district court's order with respect to the award of post-judgment interest.

## *CONCLUSION*

[¶38] The district court's conclusion that Yovanovich had an enforceable contract against MedCon and that the Yovanovich Assignment was not ambiguous was not error. The district court did not abuse its discretion in denying MedCon's motion for leave to amend its answer and the damage calculation was not clearly erroneous. However, the district court abused its discretion when it failed to award Yovanovich prejudgment interest. The district court did not err when it failed to specify post-judgment interest in its order, because decrees and judgments for the payment of money bear post-judgment interest as mandated by Wyo. Stat. Ann. § 1-16-102(a) and (b). Accordingly, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

---

[4] We recently held that "[t]here is no question § 1-16-102 requires that all decrees and judgments for the payment of money bear interest at the rate of 10% per year from the date of rendition until paid. The statute uses the word 'shall,' a word we have repeatedly said is mandatory." *Sinclair v. Sinclair*, 2015 WY 120, ¶ 11, 357 P.3d 1100, 1103 (Wyo. 2015). However, in *Sinclair*, we recognized a limited exception:

When a Wyoming court enters a divorce decree requiring a party to pay a fixed sum of money and does not set a date for payment different than the date the decree is rendered, § 1-16-102 applies and payment of interest is required. However, when a district court enters a decree and, in the exercise of its discretion to fashion a just and equitable property division, sets a date for payment different than the date the decree is rendered or provides for payment over time, it is not required to impose interest.

*Id.* at ¶ 20, 357 P.3d at 1105-06. The exception in *Sinclair* is inapplicable to this case.

15