# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 12

OCTOBER TERM, A.D. 2019

*January 29, 2020*

IN THE MATTER OF THE TERMINATION
OF PARENTAL RIGHTS TO:  DKS and
ACH, minor children,

RACHAEL MARIE HARMON,

Appellant
(Respondent),

v.

STATE OF WYOMING, DEPARTMENT OF
FAMILY SERVICES,

Appellee
(Petitioner).

S-19-0114

*Appeal from the District Court of Carbon County*
*The Honorable Wade E. Waldrip, Judge*

*Representing Appellant:*

Marion F. Marchetti and Erik J. Oblasser of Corthell and King Law Office, P.C., Laramie, Wyoming.  Argument by Mr. Marchetti.

*Representing Appellee:*

Bridget L. Hill, Wyoming Attorney General; Misha Westby, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General; Christina F. McCabe, Senior Assistant Attorney General.  Argument by Ms. McCabe.

*Guardians ad Litem:*

Dan S. Wilde, Deputy State Public Defender; Hope Mead, Wyoming Guardian ad Litem Program, a division of the Office of the State Public Defender.  Appearance by Ms. Mead.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

*BOOMGAARDEN, J., delivers the opinion of the Court; FOX, J., files a specially concurring opinion, in which GRAY, J., joins.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    Rachael Marie Harmon (Mother) appeals the district court's order following a jury verdict terminating her parental rights to two minor children under Wyo. Stat. Ann. § 14-2-309(a)(iii) and (v).   She claims that the district court improperly permitted the Department of Family Services (Department) to amend its petition, that the district court erred in its allocation of peremptory challenges, and that the evidence was insufficient to support the jury's verdict.  We affirm.

## ISSUES

[¶2]    We restate and reorder Mother's issues on appeal as follows:

> I. Whether the district court properly granted the Department's motion for leave to amend its petition.

> II. Whether Mother preserved her right to challenge the district court's allocation of peremptory challenges.

> III. Whether clear and convincing evidence supported termination of Mother's parental rights.

## FACTS

[¶3]    Mother and her three children—BPG, DKS, and ACH—have a long history with the Department.  The relevant portion of that history began in May 2016, when the Carbon County Attorney's Office filed a neglect petition against Mother.  At an initial hearing the following month, the juvenile court ordered the three children into the Department's custody for placement in foster care.  It also ordered Mother to abstain from using illegal controlled substances and to complete three consecutive, clean urinalysis tests before it would allow her visitation.  The Department provided a urinalysis test to Mother "every couple of days in June 2016," but Mother tested positive for methamphetamine in all but one.  The court held an adjudicatory hearing in July, where Mother pleaded no contest to neglect allegations.  The Department continued providing urinalysis tests to Mother, but those tests continued to show the presence of methamphetamine.  The Department consequently filed a motion for order to show cause against Mother for violations of the court's order requiring no use of illegal controlled substances.

[¶4]    In September 2016, Mother signed a case plan which focused on six areas: 1) submitting to urinalysis testing, obtaining an Addiction Severity Index evaluation, and following the treatment recommendations; 2) assisting with her case plan by scheduling, attending, and following all recommendations of service providers; 3) obtaining and maintaining appropriate housing, and removing herself from individuals under the

1

influence of drugs and alcohol; 4) obtaining employment or other services, such as food stamps or Medicaid, to support her and her children; 5) learning appropriate parenting skills; and, 6) addressing psychiatric concerns. In October 2016, however, the juvenile court held a hearing on the Department's previous show cause motion. It found Mother in contempt of court for continued methamphetamine use and sentenced her to 90 days' incarceration.

[¶5]   Mother's incarceration ended in January 2017. The Department advised her to check in with the Department upon her release, but she failed to do so, and continued using methamphetamine. She failed to attend a February 2017 multidisciplinary team meeting regarding the children. At that meeting, the team recommended proceeding with termination of Mother's parental rights. The court held a review hearing the next month, considered the multidisciplinary team's recommendation to terminate parental rights, and concluded the Department made reasonable efforts for reunification but that such efforts were no longer required. Mother made subsequent attempts to attend an in-patient treatment facility and comply with her case plan, but ultimately relapsed.

[¶6]   The Department filed termination proceedings in September 2017, alleging § 14-2-309(a)(iii) as the sole ground for termination of Mother's parental rights.[1] Approximately one year later, the Department sought leave to amend its petition to add § 14-2-309(a)(v) as another ground for termination, claiming the children were in the State's care for 15 of the last 22 months and Mother was unfit to have custody and control of her children. Mother's counsel responded to the Department's motion, but did not request a hearing. He noted that Mother did not consent to the amendment, but stated that he could not "claim undue surprise" and he had adequate time to prepare for trial. The court granted the Department's motion in November 2018.

[¶7]   At the time of trial in January 2019, two of Mother's children were minors: DKS (age 14) and ACH (age 8). After voir dire, the court allocated four peremptory challenges each to the Department, the guardian *ad litem*, and Mother. The court took a brief recess for Mother to consult with her counsel, then reconvened in open court for the parties to select the jury. At no point did Mother's trial counsel object to the allocation of peremptory challenges. The parties exercised their peremptory challenges, with the Department and guardian *ad litem* each exercising three, and Mother exercising all four. After reading the

---

[1] Wyo. Stat. Ann. § 14-2-309(a)(iii) (LexisNexis 2019) permits termination of parental rights when clear and convincing evidence establishes:

> The child has been abused or neglected by the parent and reasonable efforts by an authorized agency or mental health professional have been unsuccessful in rehabilitating the family or the family has refused rehabilitative treatment, and it is shown that the child's health and safety would be seriously jeopardized by remaining with or returning to the parent[.]

names of remaining jurors, the court asked Mother's counsel whether he had "any objection to the individuals chosen or the method used for their selection?" Mother's counsel responded "No, Your Honor."

[¶8] The court then read opening instructions to the jury, the parties presented opening statements, and the Department presented its case. The Department argued that Mother "has consistently chosen methamphetamine over her children and has been unable to care for them due to those choices," and called 14 witnesses, including various school, inpatient facility, and Department counselors and officials. One group of witnesses discussed the Department's case plan for Mother, and their efforts to reunite Mother with her children. Another group discussed Mother's, DKS', and ACH's mental, physical, and educational issues. The final group discussed concerns and potential impacts on DKS and ACH if Mother regained custody.

[¶9] Mother's counsel did not move for judgment as a matter of law at the conclusion of the Department's case, conceding that any "motion would be unsuccessful." The guardian *ad litem* did not call any witnesses. Mother's counsel called Mother as their sole witness. She testified about her addiction and personal efforts—admittedly unsuccessful due to her addiction—to reunify with DKS and ACH.

[¶10] The jury found the Department proved by clear and convincing evidence the elements required to terminate Mother's parental rights to DKS and ACH under both § 14-2-309(a)(iii) and (v). The Department then moved the court to address the best interests of DKS and ACH. The court stated that "[t]his verdict of the jury terminating the parental rights of Rachael Harmon is clearly in the best interests of these children. Their current placement is in the best interests of these children." Approximately one month later, the court entered an order terminating Mother's parental rights to both children. Mother timely appealed.

## DISCUSSION

### I.    *Motion to amend*

[¶11] Absent "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."—leave to amend should be "freely given." *Halling v. Yovanovich*, 2017 WY 28, ¶ 22, 391 P.3d 611, 619 (Wyo. 2017) (quoting *Voss v. Goodman*, 2009 WY 40, ¶ 14, 203 P.3d 415, 420–21 (Wyo. 2009)). The district court has "broad discretion" to make this determination. *Id.* (citation omitted). "Our touchstone inquiry" when considering whether that discretion was abused "is whether the trial court

3

could have reasonably concluded as it did."[2] *Id.* (quoting *Gould v. Ochsner*, 2015 WY 101, ¶ 39, 354 P.3d 965, 977 (Wyo. 2015)).

[¶12]  Mother's trial counsel could not give the district court a conclusive reason why it should deny the Department's motion. *See id.*  He noted that although Mother would not let him consent to the motion, it neither surprised him nor left him with inadequate time to prepare a defense against the additional ground.  He further said, "[a]ny objection I would be able to articulate to the [c]ourt would simply be that by allowing [the Department] to amend the Petition, it will give [the Department] a greater chance at success by providing them more grounds to terminate."

[¶13]  On appeal, Mother challenges both the timing and the content of the Department's motion.  She argues that the Department filed its motion too late, and that by granting the motion so close to trial the district court left her insufficient time to prepare a defense.  She also argues that the Department's motion included a "blatantly false" statement which prejudiced her.  Neither challenge establishes an abuse of discretion on this record.

[¶14]  While the motion to amend came late in the proceedings, the timing alone did not mandate denial, as we have never articulated a specific time—too far removed from the original filing, or too close to trial—where leave to amend should no longer be "freely given."  Considering the Department's motion in the broader context of these proceedings, it is evident that although the Department filed its motion to amend approximately one year after filing its petition, the court granted the motion before the discovery cut-off date and nearly 12 weeks before trial—an amount of time Mother's trial counsel acknowledged left him "enough . . . time to prepare."  Moreover, the new ground alleged in the Department's motion concerned facts already at issue, thus mitigating the need for extensive additional preparation.  These circumstances are materially different from those under which we have upheld denial of a motion to amend before trial.  *See, e.g.*, *Foxley & Co. v. Ellis*, 2009 WY 16, ¶ 33, 201 P.3d 425, 433 (Wyo. 2009) (upholding denial of a motion that sought to add two new causes of action after the parties had completed discovery); *W.N. McMurry Constr. Co. v. Cmty. First Ins., Inc.*, 2007 WY 96, ¶ 36, 160 P.3d 71, 82 (Wyo. 2007) (upholding denial of a motion that sought to add several "totally unrelated" causes of action, nearly ten months after filing, and a related claim which would have required additional discovery); *Ekberg v. Sharpe*, 2003 WY 123, ¶¶ 13–15, 76 P.3d 1250, 1254–55 (Wyo. 2003) (upholding denial of a motion made one month before trial and after the "discovery cut-off deadline").

---

[2] Mother asserts that we cannot know whether the court exercised sound judgment because it did not articulate its reasons for granting the Department's motion.  The absence of articulated reasons merely complicates our review. *Halling*, ¶ 23, 391 P.3d at 619–20.  We may affirm on "any legally valid ground which appears in the record supporting the judgment." *Id.* ¶ 23, 391 P.3d at 620.

4

[¶15]   Nor did the Department's misstatement require the court to deny the motion.  The Department admits it erroneously stated that subsection -309(a)(v) was not available as a ground supporting termination when it filed the original petition.   However, the Department insists that it never intended to "mislead the district court or the parties."  We found no evidence in the record to the contrary.  Mother does not assert that the Department had an ulterior motive, nor does she explain how the misstatement prejudiced her.  The district court acted reasonably in granting the Department's motion under these circumstances.

## II.     Allocation of peremptory challenges

[¶16]   Mother argues on appeal that the Department and guardian *ad litem* were on the same "side"[3] under Wyo. Stat. Ann. § 1-11-202 and, therefore, should have shared four peremptory challenges instead of each party receiving four.[4]  Mother did not object at trial to the allocation of peremptory challenges, nor did she object to the final jury composition.  Accordingly, she argues that plain error should guide our review.  Our decision in *Cargill, Inc. v. Mountain Cement Co.*, 891 P.2d 57, 65 (Wyo. 1995), instructs that Mother failed to preserve her argument for appeal.

[¶17]   In *Cargill*, we declined to address whether the court appropriately allocated peremptory challenges because Cargill failed to preserve the issue by objecting or otherwise indicating which jurors it would have opposed had it received more peremptory challenges:

> Cargill failed to indicate which jurors, if any, it would have opposed had the peremptory challenges been allocated differently, and thereby, failed to properly preserve the issue for appeal.  *Wardell [v. McMillan]*, 844 P.2d [1052, 1059 (Wyo. 1992)]; *Goldstein v. Kelleher*, 728 F.2d 32, 38 (1st Cir.), *cert. denied*, 469 U.S. 852, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984).  In *Goldstein*, the First Circuit Court of Appeals held that a jury verdict will not be reversed, due to improper allocation of peremptory challenges, unless the challenging party can "point to some convincing indication in the record that if a further peremptory challenge had been allowed, [the party] meant to challenge one or more jurors."  *Id.* at 38.

---

[3] The guardian *ad litem* informed the jury during opening statements that it was aligned with the Department.

[4] Wyo. Stat. Ann. § 1-11-202 (LexisNexis 2019) provides that "[i]n the trial of civil cases in the district courts of this state, each side is allowed three (3) peremptory challenges."  Because the court empaneled an alternate juror, it granted each party a fourth peremptory challenge pursuant to Rule 47 of the Wyoming Rules of Civil Procedure.  *See* W.R.C.P. 47(d) ("Each side is entitled to one peremptory challenge in addition to those otherwise allowed by law if one or two alternate jurors are to be empanelled[.]").

> *Goldstein*, like *Fedorchick*, is persuasive authority. *Mehring [v. State]*, 860 P.2d [1101, 1107(Wyo. 1993)].
>
> The record in this case fails to reveal which jurors were excluded by Salt Creek or Mountain Cement but desired by Cargill. The record also fails to disclose which jurors, if any, Cargill would have challenged had it been allotted additional peremptory challenges.

*Id. Cargill* makes clear that "a jury verdict cannot be attacked on the basis of improper allocation of peremptory challenges absent some indication, on the record, of which jurors the challenging party opposed." *Id.*

[¶18] The record here is similarly deficient. It fails to reveal which jurors Mother desired to empanel, but that the Department or guardian *ad litem* excluded. The record also fails to disclose which jurors, if any, Mother would have challenged had she been allotted additional peremptory challenges. At no point did Mother's counsel object to the court's allocation of peremptory challenges. Mother's trial counsel instead stated he had no such objections. Mother therefore cannot attack the jury verdict on the basis of an improper allocation of peremptory challenges.[5] *Id.*

## III.    *Sufficiency of evidence*

[¶19] The jury found that the Department proved by clear and convincing evidence the elements required to terminate Mother's parental rights under both § 14-2-309(a)(iii) and (v). Mother claims that the Department presented insufficient evidence to support termination of her parental rights on either basis. So long as clear and convincing evidence supported one basis for termination, we will affirm. *Dunlap v. State of Wyo., Dep't of Family Servs.* (*In re BAD*), 2019 WY 83, ¶ 15, 446 P.3d 222, 225–26 (Wyo. 2019). Applying the following standard, we conclude clear and convincing evidence supported the jury's verdict under § 14-2-309(a)(v):

> Due to the tension between the fundamental liberty of familial association and the compelling state interest in protecting the welfare of children, application of statutes for termination of parental rights is a matter for strict scrutiny. As part of this

---

[5] This conclusion does not disregard our recent holding in *Ellis v. State of Wyo., Dep't of Family Servs.*, 2019 WY 127, ¶ 32, 454 P.3d 908 (Wyo. 2019). There, unlike here, the Appellant preserved the issue for appellate review because she objected to the court's allocation of peremptory challenges and identified on the record which jurors she would have struck had she received additional peremptory challenges. *Id.* ¶ 26. We therefore considered the Appellant's argument on the merits and concluded that the district court erred in awarding equal peremptory challenges to the Department, the guardian *ad litem*, and Mother without determining the alignment of the parties under Wyo. Stat. Ann. § 1-11-202. *Id.* ¶¶ 27–32.

6

strict scrutiny standard, a case for termination of parental rights must be established by clear and convincing evidence. Clear and convincing evidence is that kind of proof that would persuade a trier of fact that the truth of a contention is highly probable. Rigorous though this standard may be, we apply our traditional principles of evidentiary review when a party challenges the sufficiency of the evidence supporting termination. Thus, we examine the evidence in the light most favorable to the party prevailing below, assuming all favorable evidence to be true while discounting conflicting evidence presented by the unsuccessful party.

*Id.* ¶ 14, 466 P.3d at 225 (quoting *SAS v. State of Wyo., Dep't of Family Servs.* (*In re AGS*), 2014 WY 143, ¶ 19, 337 P.3d 470, 477 (Wyo. 2014)).

[¶20] Parental rights may be terminated under § 14-2-309(a)(v) if the Department establishes by clear and convincing evidence that "[t]he child has been in foster care under the responsibility of the state of Wyoming for fifteen (15) of the most recent twenty-two (22) months" and "the parent is unfit to have custody and control of the child[.]" Mother does not dispute on appeal that the children had been in foster care with the Department for more than 15 of the last 22 months when the termination petition was filed. She argues, however, that the Department failed to establish that she was unfit to parent at the time of trial, specifically asserting that too much weight was placed on her past fitness as a parent.

[¶21] Mother is correct that clear and convincing evidence must establish that a parent is unfit at the time of the termination proceedings. *See AJJ v. State of Wyo., Dep't of Family Servs.* (*In re KMJ*), 2010 WY 142, ¶ 17, 242 P.3d 968, 971 (Wyo. 2010). However, the jury need not ignore evidence of the parent's previous unfitness. *Id.* "Evidence of a parent's past behavior is 'plainly relevant in determining current parental fitness.'" *In re AGS*, ¶ 24, 337 P.3d at 478 (quoting *HJO v. State of Wyo., Dep't of Family Servs.* (*In re KMO*), 2012 WY 99, ¶ 19, 280 P.3d 1203, 1211 (Wyo. 2012)). To determine whether a parent is unfit, it is therefore appropriate for a jury "to consider a parent's history and pattern of behavior over time." *In re KMJ*, ¶ 17, 242 P.3d at 971 (citation omitted).

[¶22] In addition, the decision whether a parent is fit to have custody and control of a child must be made within the context of the particular case—the decision "depends upon the situation and attributes of the specific parent and child." *Id.* ¶ 15, 242 P.3d at 971 (quoting *JLW v. CAB*, 2010 WY 9, ¶ 19, 224 P.3d 14, 19 (Wyo. 2010)). In each case, however, "fitness includes the ability to meet the ongoing physical, mental and emotional needs of the child." *Id.* A parent's unfitness is generally demonstrated by a variety of factors, "manifested by numerous incidents and conditions extending over a considerable length of time." *CL v. Wyo. Dep't of Family Servs.* (*In re AD*), 2007 WY 23, ¶ 26, 151 P.3d 1102, 1108–09 (Wyo. 2007) (citations omitted). Factors we have considered when evaluating

whether the Department established by clear and convincing evidence that a parent is unfit include:

> 1) inability to assist with therapy and recovery of a child with significant mental health needs; 2) lack of contact with and expressed lack of desire to take custody of the child; 3) contribution to the child's mental health or behavioral problems; 4) unstable living situation relating to employment or maintenance of a suitable home; 5) criminal record, particularly one primarily related to drug use, or a pattern of ongoing drug use; 6) failure to take responsibility for past conduct; 7) lack of emotional bond with the child; 8) failure to develop child-rearing skills; 9) convictions for crimes involving a potential for harming the child; 10) inability to monitor or make healthy nutritional choices or to provide a safe environment; 11) a history of surrounding herself and the children with unsafe individuals; and 12) the child has become upset by or resistant to visitation with the parent.

*Gillen v. State of Wyo., Dep't of Family Servs.* (*In re KCS*), 2019 WY 15, ¶ 13, 433 P.3d 892, 896 (Wyo. 2019) (quoting *LeBlanc v. State Dep't of Family Servs.*, 2017 WY 107, ¶ 23, 401 P.3d 932, 936 (Wyo. 2017) (citations omitted)).

[¶23]   Mother claims that although she struggled with methamphetamine addiction in the past, she was fit to have custody at the time of trial because she "had completed inpatient treatment and was successfully battling her addiction, providing [the Department] with one of her first clean UAs."  We must discount this evidence, however, to the extent that it conflicts with clear and convincing evidence that supported termination.[6]  *In re BAD*, ¶ 18, 446 P.3d at 226.

[¶24]   The evidence clearly showed that both children exhibit significant mental health problems and educational issues because of Mother's neglect and abuse.  Both children suffer from reactive attachment disorder—a condition caused by "a constant state of distress," resulting in atypical cortisol levels which inhibit an individual's problem solving and decision making—and posttraumatic stress disorder, among other mental health conditions.  One of DKS' counselors testified that he is an "extreme" case with respect to his diagnoses and age—he needed "consistency from [his] furniture to [his] daily schedule to [his] meal plan."  ACH needed an abuse free environment, consistency, permanency, and parents who are present, sober, and "emotionally stable[.]"  One of his counselors

---

[6] Though we hope Mother maintains her sobriety, the evidence viewed in the light most favorable to the Department showed that Mother failed to evidence a pattern of sustained sobriety during the time period in which she claimed to have been sober.

opined that if ACH did not have the consistency and stability he needed, "his behavior would be out of control," "he could become very [] violent," and he could "go to jail for hurting somebody." Because of their conditions, both children exhibit violent outbursts and may never be able to live on their own.

[¶25] The evidence was also unequivocal that Mother lacked contact with the children while they were in the Department's custody. Although Mother could have interacted with her children by complying with the court's order to abstain from using illegal controlled substances, there was only one period through that time—during Mother's incarceration—when the Department could "establish that she was free from substances" and allow visitation. That lack of contact "severely" affected the children's reactive attachment disorder. DKS relayed to his counselor an event when he experienced fear and panic after he mistakenly thought he saw Mother in a grocery store. ACH's counselor testified that after ACH confronted Mother at a multidisciplinary team meeting, he felt more neglect and began exhibiting violence towards others.

[¶26] The Department's evidence further demonstrated that Mother could not meet the children's needs due, in part, to her employment and living situation. Mother continued to struggle to maintain stable employment and, at the time of trial, food stamps comprised her sole source of income. She did not have consistent housing: she and her fiancé lived rent free with a fellow church member in that member's one-bedroom apartment. Mother testified that she and her fiancé would soon move into a two-bedroom apartment that her church was going to help her pay for until she found a job. Mother testified that her fiancé was a recovering methamphetamine addict with whom she previously had a tumultuous relationship, and one witness expressed concern that the relationship could negatively impact the children.

[¶27] Moreover, the jury heard evidence that Mother never completed the Department's parenting and diagnosis-specific trainings, nor had she addressed her own mental and physical health concerns. Both children needed a caregiver with very specific training to progress in their treatment. DKS needed a caregiver who constantly receives "extreme training." ACH needed a caregiver who, through "training and . . . a support system . . . [and] some sort of respite care," can identify and appropriately react to his emotions. Training could have allowed Mother to assist in the children's treatment, but she neither completed nor—according to a witness who participated in one multidisciplinary team meeting—appeared receptive to that training.[7]

[¶28] This evidence conflicts with Mother's claimed sobriety and fitness at the time of trial. It is the kind of proof that would persuade the jury that the truth of the Department's

---

[7] Mother testified that she sought and received counseling from her bishop at her church; however, nothing in the record showed that the bishop had the professional qualifications or training necessary to adequately address Mother's needs.

contention that Mother was unfit to have custody and control of DKS and ACH is highly probable. *In re BAD*, ¶ 14, 466 P.3d at 225. We therefore conclude the Department met its statutory burden, and affirm the district court's order terminating Mother's parental rights.

[¶29]   Affirmed.

**FOX, Justice,** specially concurring, in which **GRAY, Justice,** joins.

[¶30]   I join the majority opinion because I agree that stability of the law requires us to restrain ourselves from renewing minority views already expressed, and recognizing my position explained in *Matter of BAD*, 2019 WY 83, 446 P.3d 222 (Wyo. 2019), "might be asserted again at another more propitious time." *Farnsworth v. State*, 2017 WY 137, ¶ 22, 405 P.3d 1067, 1072-73 (Wyo. 2017).